[No. B161797. Second Dist., Div. Four. Sept. 16, 2004.]

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Plaintiff and Respondent, v.
AARON H. SHEILY, Defendant and Appellant.

**COUNSEL**

Philip L. Nadler for Defendant and Appellant.

Meyers, Nave, Riback, Silver & Wilson, David W. Skinner, Lori J. Regler; James E. Holst, Gary Morrison and James D. Agate for Plaintiff and Respondent.

**OPINION**

**EPSTEIN, Acting P. J.**—Aaron H. Sheily, D.D.S. (Dr. Sheily, or appellant) appeals from a judgment denying his claim for compensation for goodwill in a bifurcated condemnation action brought by the Regents of the University of California (Regents, or respondent). The action was brought to acquire by condemnation Dr. Sheily's leasehold interest in an office building in the City of Santa Monica. In a bench trial, the court concluded that Dr. Sheily failed to prove by a preponderance of the evidence that he was entitled to compensation for loss of goodwill, under the requisites of Code of Civil Procedure section 1263.510. (All further statutory references are to that code, unless another is cited.) We conclude that his challenges to the trial court's determination are not well taken, and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

The following summary is taken from the record on appeal.[1] In reviewing the record we are required to resolve all factual matters supported

---

[1] We note at the outset a serious deficiency in appellant's briefing. In its discussion of the facts, appellant's opening brief is almost entirely devoid of references to the record, and particularly to the reporter's transcript of testimony. Instead, pages of fact material are set out without any record reference at all. This is a violation of former California Rules of Court, rule 15(a) (now rule 14(a)(1)(C)): "Each brief must . . . [¶] support any reference to a matter in the record by a citation to the record." It is not the task of the reviewing court to search the record for evidence that supports the party's statement; it is for the party to cite the court to those references. Upon the party's failure to do so, the appellate court need not consider or may disregard the matter. (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834]; *Aguimatang v. California State Lottery* (1991) 234 Cal.App.3d 769, 796 [286 Cal.Rptr. 57]; both cited with approval in *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 [126 Cal.Rptr.2d 178] [like this, a condemnation case].) The same is true with respect to

by citations to the record in favor of respondent. (See *Cochran v. Rubens* (1996) 42 Cal.App.4th 481, 486 [49 Cal.Rptr.2d 672], and numerous cases collected in 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 359, p. 408.)

Dr. Sheily, a dentist, purchased the leasehold interest of a Dr. White in a building located at 1502 Wilshire Boulevard in Santa Monica, near Santa Monica Hospital. He moved his practice there in 1996. Previous to that, he had practiced at three other locations in Santa Monica and West Los Angeles. The Regents acquired the hospital in 1995, and decided to perform various repairs to the structure and to build a new orthopaedic building. Completion of the project required acquisition of the building at 1502 Wilshire, which the Regents planned to demolish for purposes of constructing a new building. The acquisition was accomplished in August 1999.

Demolition of the building at 1502 Wilshire required that the Regents eliminate outstanding leasehold interests in the property, by purchase or condemnation. Prior to that, appellant and Dr. Shanhrokh Dayyani, an optometrist, had decided to establish secondary practices at another location. This was in 1998. Appellant and Dr. Dayyani proceeded with their plans, located a property in Marina del Rey, acquired it and remodeled it to accommodate their practices. This occurred between March and September 2000.

Meanwhile, in May 1999, the Regents hired relocation consultants to assist tenants of 1502 Wilshire (there were some 20 tenancies left involved) in relocation. Both Dr. Sheily and Dr. Dayyani were tenants there. The consulting firm wrote Dr. Sheily in June 1999 informing him of the Regents' plans for the building and that he eventually would have to move, and offering to provide relocation assistance. The letter requested a meeting, which took place. The consulting firm wrote several more letters to Dr. Sheily, in August, September and October of 1999, enclosing lists of possible replacement properties then available and offering to help in investigating the properties and to accompany Dr. Sheily on site visits. Dr. Sheily never followed up on these overtures.

---

*appellant's legal arguments that are not supported by citation to legal authority.* (See *Trinkle v. California State Lottery* (2003) 105 Cal.App.4th 1401, 1413 [129 Cal.Rptr.2d 904].)

Appellant twice sought to augment the record by the addition of various documents he claimed were filed but not docketed in the trial court. The applicable Rule of Court (rule 12(a)) provides that requests for augmentation are to be filed within 40 days of the filing of the record on appeal, unless good cause is shown. Appellant's first request was filed 79 days late, presented no excuse for the late filing, and failed to demonstrate that the documents for which augmentation was sought actually were lodged or filed with the trial court. The second request was filed 269 days late and had the same deficiencies. We denied both requests. The subject is repeated in appellant's reply brief, most of which is devoted to this issue. Nothing is presented that warrants our revisiting the issue.

There was a meeting between the consultants with Regents' counsel, and tenants of 1502 Wilshire in January 2000. The tenants were informed that they would have to vacate their leaseholds by the end of November 2000, and that relocation assistance would be provided. They also were told that the Regents would work with them with respect to issues of compensation for improvements at their tenancies and loss of goodwill. At that meeting, Karen Edelman, a consultant representative, explained the normal procedure for relocation assistance: identification and acquisition of a replacement site, building out on the site, submission of a claim for expenses based on receipts, and reimbursement. In cases of hardship, reimbursement money could be advanced.

It was the next month that Drs. Sheily and Dayyani began negotiating for acquisition of the Marina del Rey property for their secondary practices. Escrow closed on that property in spring 2000. The purchase price was almost $1.1 million, of which a down payment of almost $220,000 was paid and the balance financed by a loan. These costs and debts were divided evenly between Drs. Sheily and Dayyani. The two retained an architect to design the space, obtained necessary permits for construction, and engaged a contractor. They spent approximately $500,000 on the conversion.

Dr. Sheily would not allow the Regents' representative to conduct an inventory of fixtures, equipment and improvements at his leasehold. He thought the representative was trying to interrogate him and he was suspicious of "snooping." This situation persisted from February to June 2000, when the representative finally was allowed to complete an appraisal. He valued the fixtures, equipment and improvements, all of which the Regents proposed to acquire, at $94,000.

Meetings were held between Dr. Sheily and representatives of the Regents in May, June and July of 2000 in an effort to resolve issues about relocation assistance, compensation for improvements, and payment for loss of goodwill. They were not productive. At trial, asked to acknowledge that he repeatedly had said that he would not even begin to look at a new site unless and until UCLA agreed to pay for a site identical to his leasehold at 1502 Wilshire, Dr. Sheily answered:

"You know, I received information from you saying that I do not—I'm not entitled to a replacement office same as mine. And I use[d] tactics to negotiate with you and saying—demand that I should be compensated to have a beautiful office like the way I have, and you told me that I can't." He admitted that "as part of negotiation" he repeatedly asserted that he "would not even begin to look at a new site unless and until UCLA agreed to pay for a new site that is identical" to the one he had. He thought he was being "back-stabbed" by UCLA.

On four occasions, between August 1999 and April 2000, the consultants sent Dr. Sheily lists of available properties and agreed to help him in checking them out. He did not accept any of these offers. He did look at four possible sites for himself and Dr. Dayyani, but he found none of them to be satisfactory. The reasons varied from wanting to be in the same building as Dr. Dayyani to not wanting the same landlord as he had at an earlier tenancy, or being too close to a UCLA hospital. Of the sites proposed by the consultants only one elicited an interest from Dr. Sheily, the Creative Computer location. But that one, a retail property, had parking problems that apparently were not resolved.

Dr. Sheily had not informed the consultants or the Regents of his plans to open a practice at the Marina del Rey site. They found out about it September 2000, upon reading a declaration by Dr. Sheily filed by his attorney in an effort to stay prejudgment possession by the Regents. The declaration stated:

"Prior to being apprised of the eminent domain proceeding, I had planned to expand my practice and to open a second office in Marina del Rey . . . . [¶] Because I have been involved in the Marine Del Rey project and have still been conducting my practice, I have been unable to locate any relocation space in Santa Monica. As a result of the expenses involved in the new project, I cannot afford to enter into a new lease and to prepare a new office in Santa Monica at the present time. Because of logistical and financial restraints, I will not be able to relocate my present practice to a comparable Santa Monica location until after I am set up in Marina del Rey."

In June 2000, the Regents sent Dr. Sheily a notice of intent to adopt a resolution for condemnation of his leasehold interest, and in July the Regents adopted the necessary resolution. A complaint in condemnation was filed in August 2000. Dr. Sheily vacated the 1502 Wilshire property in March 2001, taking machinery, fixtures and equipment with him. He began operating his practice at the Marina del Rey location in April 2001. (Dr. Dayyani opened a practice there shortly thereafter, but the two had a disagreement and Dr. Dayyani left.)

The only contested issue for purposes of the present appeal is Dr. Sheily's entitlement to compensation for loss of goodwill as a result of the condemnation. That issue was tried to the court during four days in April 2002, after which it was submitted. The court rendered its decision on submitted matter some two weeks later, finding against Dr. Sheily and in favor of the Regents. The court issued a seven-page statement of decision explaining the reasons for its ruling. Judgment was issued in August 2002, and notice of entry of judgment was given a few days after that. It was followed by a timely notice of appeal.

## DISCUSSION

■ The Fifth Amendment to the United States Constitution provides that "just compensation" must be paid to a property owner whose property is taken through the government's power of eminent domain. The California Constitution provides a similar right. (Cal. Const., art. I, § 19.) But the constitutional right to just compensation has been construed not to include the loss of goodwill to a business whose property is taken by the power of eminent domain. (*Community Redevelopment Agency v. Abrams* (1975) 15 Cal.3d 813, 831 [126 Cal.Rptr. 473, 543 P.2d 905] [leading case].) The Legislature responded to this rule of judicial construction by enactment of a statute that recognizes a right to compensation for loss of goodwill, under specified conditions. In pertinent part, that statute, section 1263.510, provides:

"(a) The owner of a business conducted on the property taken, or on the remainder if such property is part of a larger parcel, shall be compensated for loss of goodwill if the owner proves all of the following:

"(1) The loss is caused by the taking of the property or the injury to the remainder.

"(2) The loss cannot reasonably be prevented by a relocation of the business or by taking steps and adopting procedures that a reasonably prudent person would take and adopt in preserving the goodwill. [¶] . . . [¶]

"(4) Compensation for the loss will not be duplicated in the compensation otherwise awarded to the owner.

"(b) Within the meaning of this article, 'goodwill' consists of the benefits that accrue to a business as a result of its location, reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage."

■ The purpose of the goodwill provision "was unquestionably to provide monetary compensation for the kind of losses which typically occur when an ongoing small business is forced to move and give up the benefits of its former location." (*People ex rel. Department of Transportation v. Muller* (1984) 36 Cal.3d 263, 270 [203 Cal.Rptr. 772, 681 P.2d 1340].) There is a right to have a jury determine the *amount* of just compensation, but the issue of *entitlement* to compensation for goodwill under the statute is for the court to decide. (*Emeryville Redevelopment Agency v. Harcros Pigments, Inc.* (2002) 101 Cal.App.4th 1083, 1119 [125 Cal.Rptr.2d 12].) And while neither party bears the burden of proof on the amount of compensation (§ 1260.210,

subd. (b)), the owner who claims the benefits of the statute bears the burden of proving entitlement to those benefits. (*Ibid.*) Absent a different specification of what that burden is, and there is none applicable to this case, the general standard of proof is applied: preponderance of the evidence. (Evid. Code, § 115.) By referring to the steps and procedures that a "reasonably prudent person would take and adopt in preserving the goodwill," (§ 1263.510, subd. (a)(2)) the statute itself calls for an objective standard.

In this case, entitlement to goodwill was contested. The trial court bifurcated the issue from the amount of compensation to be paid if entitlement is proven, and ordered the entitlement issue to be tried first. It found that Dr. Sheily had failed to prove that loss of goodwill reasonably could not have been prevented by relocation of the business or by employing steps and procedures that a reasonable person would have taken to avoid losing goodwill. The sole issue on this appeal concerns the correctness of the trial court's ruling, including the procedures it followed in reaching its decision.

Before turning to appellant's particular assignments of error, it is useful to review the trial court's thorough statement of decision. The court began by identifying the issue (entitlement to compensation for loss of goodwill under § 1263.510), and followed that with a summary of appellant's tenancy at 1502 Wilshire and the relocation services made available to him by the Regents. It next discussed his purchase and improvements of the Marina del Rey property. The court then turned to the question of appellant's credibility:

"The credibility of Dr. Sheily has been seriously compromised. He testified that he reviewed the properties presented by UCLA consultants during 1999 and 2000, going to the locations, speaking with landlords, etc., and that none of the locations were acceptable." The court continued, quoting Dr. Sheily's September 2000 declaration, which we have quoted. This declaration, the court said, "demonstrates that, contrary to his testimony in this trial, he did not have time to relocate his Santa Monica (1502 Wilshire) practice; did not make any effort to relocate the Santa Monica practice; did not consider the Marine del Rey offices a 'relocation' ('two offices encompassing two distinct geographic areas'); and, by September 2000, did not have the financial resources available to relocate the Santa Monica practice."

Continuing, the court recounted that appellant "took the position that UCLA, and UCLA's consultants could not be trusted. Sheily felt that UCLA 'backstabbed him' and 'had no compassion' and that 'the Regents are using their unrestrained power to threaten and terrify us.' " (Quoting from a letter in evidence.) "Sheily refused to use the services offered by UCLA to provide a replacement location for Sheily's Santa Monica practice. Sheily did not disclose to UCLA, during meetings with Sheily to help him relocate, that he

and Dr. Dayyani had purchased the Marina del Rey location and intended to open a new and separate practice. This evidence lends support to the fact that Sheily made no effort or good faith effort to relocate his 1502 Wilshire practice. [¶] Sheily presented no evidence to corroborate the fact that he made efforts to relocate his Santa Monica practice. In March 2001, Sheily moved out of 1502 Wilshire and moved into his Marina del Rey facility.

"UCLA (Regents) presented evidence that they did everything required to assist Sheily to relocate his practice, but were met with an almost total lack of cooperation on the part of Sheily. There is also testimony that Sheily was paid approximately $94,000 for his equipment, and, in spite of his acceptance of that payment, took the equipment with him to the Marina del Rey location."

The court then addressed the first element of section 1263.510, subdivision (a)(1): whether the loss was caused by taking of the property. That issue includes a determination of whether there was a loss of goodwill as a result of the taking. The court found it unnecessary to rule on that issue. But it did rule on the second:

"Sheily has failed to present evidence, by a preponderance of the evidence, that the 'loss cannot reasonably be prevented by a relocation of the business.' [Citation.] Sheily's testimony lacked credibility. Sheily failed to demonstrate that his loss of goodwill could not be reasonably prevented by relocating his Santa Monica practice. Sheily's conduct was not reasonable.

"Sheily has failed to present evidence, by a preponderance of the evidence, that he took steps and adopted 'procedures that a reasonably prudent person would take and adopt in preserving the goodwill.' [Citation.] Sheily's testimony lacked credibility. Comparable sites in Santa Monica were available. Sheily failed to show that his conduct was reasonable or that he attempted to relocate his Santa Monica practice." Summarizing, the court concluded: "Sheily has failed to prove, by a preponderance of the evidence, that he is 'entitled' to compensation for loss of goodwill . . . . Judgment for Plaintiff (Regents)."

Dr. Sheily's first claim of error is that the trial court held him to a higher standard of proof than preponderance of the evidence. There is no support for this assertion, particularly in the face of the court's repeated references to preponderance of the evidence in its statement of decision.

In this part of his brief, Dr. Sheily seems to be taking the position that the trial court could not substitute its judgment for his own with respect to relocation of his practice "and spitefully deny him all compensation for loss

of goodwill." Of course, Dr. Sheily was entitled to relocate his practice wherever he chose; that is not an issue. But with respect to whether he satisfied the statutory requisites for goodwill compensation, it was decidedly the province of the trial court to assess Dr. Sheily's credibility, and it did.

The next claim is that the trial court erroneously found that Dr. Sheily had a duty to use the Regents' relocation services, and that it erred in finding that adequate and suitable space was available for relocation of his practice. The court did not find that Dr. Sheily had a duty to use relocation services afforded to him by the Regents. But he was required to act reasonably to preserve the patient patronage he had and to attract new patients. He could do that by his own efforts, separate from any help by the Regents, by using their help, or by some combination. The court found that business-suitable sites were available, even though they did not satisfy Dr. Sheily. One was rejected because it was owned by a former landlord; another because Dr. Sheily wanted to be in the same building as Dr. Dayyani, although they already were located together in the Marina del Rey property. Perhaps most important, the court found that, based on his September 2000 declaration, Dr. Sheily was not seriously interested in moving his practice at all during the pertinent time.

Dr. Sheily's next argument is that the trial court "protests too much" about lack of credibility: its repeated statements that Dr. Sheily lacked credibility were made "to shield its bad, prejudiced judgment from attack." There is no justification for that calumny.

■ The next claim is that the trial court should not have bifurcated the trial between entitlement to compensation for loss of goodwill and the amount of compensation that should be paid. While acknowledging the court's right to do so, Dr. Sheily claims doing so was error because it excluded evidence the court should have considered on whether "Compensation for the loss will not be duplicated in the compensation otherwise awarded to the owner." (§ 1263.510, subd. (a)(4).) First, this element of the statute does not appear to have been an issue in the trial; there is no suggestion anywhere of a claim that an award of goodwill damages to Dr. Sheily would have resulted in duplicate compensation to him. Obviously, appellant was not entitled to defeat bifurcation by this non-issue. More fundamentally, the decision to bifurcate is discretionary with the trial court. (See § 1048; *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 911 [93 Cal.Rptr.2d 364].) This case presents a paradigm example of the propriety of bifurcation. ■ Under the statute, goodwill compensation is dependent on a finding of entitlement—an issue to be decided by the court. If entitlement is found, there is a right to have the jury determine the amount of compensation. The second is dependent upon the first, and it is likely to be confusing to the jury and inefficient to everyone if both are tried at the same time. There was no abuse of discretion here.

Dr. Sheily argues that the proceedings were tainted by the presence of an attorney for the Regents at the general meeting conducted by the Regents' consultants with the tenants. Nothing is cited to support the implied claim that Dr. Sheily was misled into thinking this attorney was acting as his lawyer, especially given Dr. Sheily's claim of distrust of the Regents. Nor is anything shown to demonstrate that the attorney did anything improper and, in particular, that he misrepresented his role.

Finally, Dr. Sheily makes a conclusionary argument that the trial court erred in finding that he failed to prove entitlement to goodwill compensation by a preponderance of the evidence. To the contrary, the record fully supports the trial court's decision.

## DISPOSITION

The judgment is affirmed. The respondent is to have its costs on appeal.

Hastings, J., and Curry, J., concurred.