Filed 7/22/16  Marriage of Nelson CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re Marriage of KELLEY and WILLIAM L. NELSON. | B266745 |
| | (Los Angeles County Super. Ct. No.BD603233 ) |
| KELLEY NELSON, Appellant, v. WILLIAM L. NELSON, Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Michelle Williams Court, Judge.  Reversed and remanded with instructions.

Trope and Trope, Thomas Paine Dunlap and Ronald A. Rale for Appellant.

Phillips & Jessner, Gregory W. Jessner and David A. Campbell for Respondent.

## INTRODUCTION

Kelley Nelson appeals from orders entered in her dissolution proceeding awarding temporary child support and denying her request for attorney's fees. She contends the trial court abused its discretion in calculating the amount of child support owed to her by using outdated and incomplete income information from her husband, respondent William Nelson. Kelley[1] further claims it was error for the court to find that she had not established a need for contribution toward her attorney's fees and costs and that none of the fees she sought were reasonable. We conclude that the court should have used William's updated income information to calculate the amount of child support and to determine whether Kelley needed a contribution toward her attorney's fees. Because it did not, its findings were not supported by substantial evidence; the court accordingly abused its discretion in determining the appropriate award of child support and in assessing whether Kelley was entitled to any attorney's fees and costs. Accordingly, we reverse and remand.

## FACTUAL AND PROCEDURAL HISTORY

Kelley filed a petition for dissolution of marriage on June 11, 2014, after almost thirteen years of marriage. During the marriage, William worked as an attorney and Kelley stayed at home with the couple's two children. In her petition, Kelley requested sole legal and physical custody of the children, then ages 12 and 9.

A.      *Prenuptial Agreement*

The parties entered into a prenuptial agreement in 2001. Under the terms of section 11 of the agreement, William agreed to pay Kelley a fixed amount of monthly spousal support, determined by the number of years of marriage. Section 11 also contained a provision stating that the "parties have also agreed that the amounts payable to Kelley as provided in this Section 11, should be sufficient to pay all of her reasonable attorney's fees and costs in the event of a dissolution and Kelley agrees that Bill shall have no liability for any of her attorney's fees and costs, except to the extent provided in

---

[1]We refer to the parties by first name because they share a surname.

2

Section 26 below." Section 26 allowed an award of attorney's fees and costs to the prevailing party in an action to, among other things, "enforce or prevent a breach of any term or provision" of the agreement.

Kelley initially contested the validity of the prenuptial agreement and sought to bifurcate that issue for trial. She ultimately stipulated to the validity of the agreement on April 30, 2015 and the court entered judgment on that stipulation on June 8, 2015.

B.      *DVRO and First RFO*

Kelley filed a request for a Domestic Violence Restraining Order (DVRO) along with her petition for dissolution on June 11, 2014. She also filed a Request for Order (RFO) seeking child support, spousal support, and $100,000 in attorney's fees. The trial court heard testimony regarding the DVRO over several days, culminating in a hearing on September 19, 2014. The court made detailed findings on both the DVRO and the RFO orally at the hearing and then in a written order filed November 14, 2014.

The court denied Kelley's request for a DVRO, finding her testimony about her alleged injuries was "not consistent," that William's version of the alleged events was "more credible" than Kelley's version, and that it appeared that Kelley was the "primary aggressor." In denying the DVRO, the court found it had no jurisdiction to make a child custody order, and therefore no basis to award child support at that time.

Because Kelley was contesting the validity of the prenuptial agreement at the time, the parties agreed that the court could award temporary spousal support based on the statutory guideline formula, rather than the amount provided in the prenuptial agreement. The court ordered spousal support from William to Kelley in the amount of $5,897 per month. This amount was calculated using William's income and expense declaration submitted in August 2014 (2014 declaration), in which he reported the following monthly amounts:  $4,166 in wages and salary, $7,000 in self-employment income, $5,971 in dividends, and $3,678 in social security received for William and the children.

3

The court granted Kelley's request for attorney's fees in part, pursuant to Family Code section 2030[2], ordering William to contribute $25,000 toward Kelley's attorney's fees. William did so by paying off a credit card charge for $25,000 that Kelley already had made to her attorney, Brett Berman.

Noting that Kelley "doesn't have income, other than her support," the court found that she "does have a need for contribution for attorney's fees and that [William] does have an ability to pay." However, the court further found that "a substantial portion of the attorney's fees requested for work that has been done to date is not reasonable." In partially granting Kelley's request and ordering William "to make a $25,000 contribution to fees," the court stated that the order was "without prejudice to a future request for additional attorney's fees based on work that is done in the future. The court does not intend that this $25,000 contribution should be adequate in order to allow [Kelley] to fully litigate the case."

C.    *Resolution of Custody*

On April 2, 2015, William filed an RFO seeking joint physical custody of the children. He claimed that Kelley was unfairly restricting his time with the children. The parties entered into a stipulation and order on June 8, 2015, providing for joint legal custody and shared physical custody.

D.    *Kelley's Second RFO*

On May 5, 2015, Kelley filed the RFO at issue on appeal, seeking, as relevant here, child support, attorney's fees, and costs. Specifically, Kelley sought an award of temporary guideline child support.[3] In making the guideline calculation, Kelley requested that the court use William's 2014 declaration as evidence of his income.

---

[2]All further statutory references are to the Family Code unless otherwise indicated.
[3]California uses a "statewide uniform guideline for determining child support orders." (§ 4055,1 subd. (a).) This guideline is an algebraic formula based on the parents' taxable incomes and other variables. (*Ibid*.) The court may depart from the guideline only in "special circumstances" set forth in the child support statutes. (§ 4052.) Neither party disputes that the guideline was applicable in this case.

4

Kelley also requested an order that William pay her litigation fees—$250,000 in attorney's fees and $75,000 in fees for a forensic accountant. In her declaration accompanying the RFO, Kelley stated she had retained new counsel, Trope and Trope LLP, in September 2014, that the "vast majority" of work done by her prior counsel related to seeking the DVRO, and that none of the fees she currently sought were for "past services related to the domestic violence proceeding." She claimed she did "not have any source of funds" to pay her attorneys or a forensic accountant, as she had borrowed funds "to retain my current counsel and to pay my living expenses." Kelley stated that she was unemployed, and had not worked outside the home since approximately 1999, at which time she earned $2,833 per month as an assistant teacher. She was a "full-time stay-at-home mother" for the entirety of her marriage to William.

The RFO also included a declaration from Kelley's counsel, Ron Rale, as well as supporting billing statements. Rale stated that Kelley had incurred $135,698.50 in attorney's fees and costs from September 2014 through March 31, 2015, of which she had paid $51,500 from personal loans. Although the billing statements were heavily redacted, Rale's declaration provided a monthly breakdown of categories of fees incurred, including work related to (1) "the validity and enforceability" of the parties' premarital agreement; (2) "custody matters"; (3) review of the case file and work done by Kelley's prior counsel; and (4) the characterization of Undine Farms, a property acquired by William during the marriage, for which Kelley claimed she was owed a 50 percent ownership interest. In addition, Rale estimated he would need fees for future work regarding (1) Kelley's claim that William breached the premarital agreement[4]; (2) child support, particularly "discovery and analysis relative to [William's] cash flow"; (3) child custody; (4) the characterization of the parties' interest in Undine Farms; and (5) further discovery and preparation of the RFO.

---

[4]In his declaration, Rale acknowledged that Kelley "has determined that she will not contest the validity of the parties' prenuptial agreement," but asserted that Kelley intended to proceed with a claim that William breached the agreement by "failing to comply with a requirement to contribute to a community fund each year."

Kelley's RFO also included a declaration from her forensic accountant stating that she had approximately $16,000 in unpaid fees for work done to date and estimating an additional $75,000 in fees for future services on the case.

Kelley also filed her own income and expense declaration, listing her only income as $5,897 in spousal support and $624 in Social Security per month. She also listed approximately $17,500 in banking accounts and other liquid assets. She reported receiving approximately $7,000 per month in loans "from family and friends," for a total of $171,730 in personal loans, none of which she had repaid.

In his response to the RFO, William agreed to guideline child support. He objected to Kelley's request for fees as "lack[ing] any foundation in reality," arguing that Kelley's attorneys had incurred the bulk of their fees litigating issues that should have been easily resolved and that the assessment of future costs was unreasonable.

Kelley filed a reply in support of her RFO on June 15, 2015, arguing that William had failed to submit a "current" income and expense declaration along with his opposition, as required by Rules of Court, rules 5.427 and 5.260.[5] In his opposition, William had agreed to Kelley's request in her moving papers that the court use his prior declaration.

With respect to her request for fees, Kelley's reply stated that her request had "slightly changed" since filing her RFO; she accordingly withdrew portions of her request and added others. Specifically, Kelley withdrew her claim for prospective fees related to custody, in light of the parties' June 8, 2015 custody stipulation, but added approximately $28,000 in fees incurred on this issue between the end of March (when she

---

[5]Rule 5.260 requires a party responding to a request for a child support order to file "a current, completed Income and Expense Declaration," with "current" defined as having been "completed within the past three months providing no facts have changed." Rule 5.427(c) imposes the same requirement when responding to a request for attorney's fees and costs under section 2030.

6

filed her RFO) and the beginning of June.[6]  She also withdrew her request for future fees related to the ownership of Undine Farms, as she had retained separate counsel for that issue.

As requested by Kelley, William filed an updated income and expense declaration on June 17, 2015 (2015 declaration).  He reported income of $4,166 in wages and salary, $0 in self-employment income, $6,921 in dividends, and $3,878 in Social Security received for himself and the children.  He also reported receipt of a one-time inheritance of $1.3 million, and assets of $60,000 in bank accounts, $2.9 million in liquid assets, and $3.56 million for real and personal property.  He reported that he had paid $160,837 in attorney's fees to date from "earnings/savings," and that he owed an additional $96,014, plus unbilled amounts.

William's 2015 declaration included as an attachment a profit and loss statement for his law firm, Nelson and Nelson, reflecting the firm's income and expenses for 2013 and 2014.  This statement showed net firm income for 2014 of $187,091.87.  The listed firm expenses included a payment for legal fees of $25,000 to "Law Office of Bret" and a payment to the law firm representing William in his dissolution proceeding in the amount of $161,583.87.

At the hearing on July 15, 2015, the court noted that the fees requested by Kelley related to child support and custody were quite high (about $50,000).  William's counsel argued that the amount Kelley claimed for work on the custody issue, which he characterized as "one motion and one hearing," was "bizarre and ridiculous, and that the entire amount "reasonably . . . can't be more than, I don't know, $15,000."  The court questioned Kelley's counsel extensively regarding why Kelley was entitled to any fees

---

[6]This request was once again supported by heavily redacted billing statements, but did not include any breakdown by category in Rale's accompanying declaration.

7

beyond child custody and support, given the parties' stipulation to the validity of the prenuptial agreement.[7]

The court also noted its prior award of $25,000 in fees. Kelley's counsel confirmed that the entire amount had been paid to her prior counsel for his work related to the DVRO proceeding. William's counsel argued that the prior $25,000 paid should be "subject to reallocation," because at the time of that award, there had been no determination of the validity of the prenuptial agreement and the fees were awarded as part of a larger request for fees needed for the entire litigation. However, because the parties stipulated to the validity of the agreement, he claimed Kelley was only entitled to fees related to custody and support, and that amount would reasonably be no more than $25,000.

William's counsel also argued that forensic accounting fees were unnecessary, as his "finances are not particularly complicated." Kelley's counsel walked the court through the details of the items on William's 2015 declaration, and argued that the court should utilize his law firm's profit and loss statement to impute additional income to William. The court took the matter under submission.

The court issued its order on August 11, 2015. It did not reference or discuss William's 2015 declaration or the accompanying profit and loss statement. The order granted child support of $3,793 per month and further ordered the parties to split the cost of private school tuition for the children. Kelley's half of the tuition ($2,650) was deducted from the child support award, for a net monthly award of $1,143. It is undisputed that the numbers included in the DissoMaster[8] report attached to the court's order reflected the amounts reported in William's 2014 declaration, including $7,000 in self-employment and $9,649 in other taxable income.

_____

[7]William does not dispute that Kelley's right to seek fees for litigation of child custody and support issues cannot be waived by the parties' agreement. (See, e.g., *In re Marriage of Joseph* (1990) 217 Cal.App.3d 1277, 1285.)

[8]The DissoMaster is a computer program used to calculate guideline child support under the algebraic formula required by section 4055. (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 524.)

Regarding fees, the court noted the prior award to Kelley of $25,000 in attorney fees "for this litigation." Based on the DissoMaster report, the court further found that Kelley had "50.3% of the total combined spendable income." The court also stated, "Both parties have substantial attorney fee obligations. Petitioner has about $17,500 in liquid assets and an undisclosed amount of other real and personal property. Moreover, the information Petitioner does disclose supports an inference that she is receiving additional income to meet her expenses. The court finds that Petitioner has not met her burden of proving she has a need for attorney fees. In addition, the court finds Petitioner has not met her burden of proving the reasonableness of the attorney fees she seeks, because a significant amount of the work completed and for which she seeks a fee contribution was duplicative as a result of her choice to retain new counsel . . . and her choice to incur fees to litigate matters covered by the parties' premarital agreement, which Petitioner has stipulated is a valid agreement." The court accordingly denied Kelley's request for fees. Kelley timely appealed.

## DISCUSSION

Kelley presents two arguments on appeal regarding the court's August 2015 order. First, she argues the court erred in calculating child support based on William's 2014 declaration rather than his 2015 declaration and attached profit and loss statement. Second, she contends the court abused its discretion in denying her request for fees.

As an initial matter, we note that the appellate briefs filed by both parties were deficient and failed to assist this court in our understanding of the facts or analysis of the legal issues in this case. In her opening brief, as she did below, Kelley largely ignores the existence of the parties' prenuptial agreement and its limiting effect on her ability to seek attorney's fees. For his part, William's brief makes repeated references to evidence without any citation to the record as required by Rules of Court, rule 8.204(a)(1). Indeed, in many instances, our review of the record confirms no evidence supporting these statements. It is not this court's task to search the record for evidence that supports a party's factual statements, and we may disregard statements not supported by proper citation. (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1310, fn. 3 (*Tharp*);

9

*Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 826, fn. 1.) Both parties also misrepresent the record in several places.

    A.    *Standard of Review*

    A trial court's award concerning child support is reviewed for abuse of discretion. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282; *In re Marriage of Chandler* (1997) 60 Cal.App.4th 124, 128.)  Similarly, "a motion for attorney fees and costs in a dissolution proceeding is left to the sound discretion of the trial court. [Citations.]" (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768.)

    "Generally, 'the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered. [Citations.]' [Citation.]" (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 197.)  To the extent that a trial court's exercise of discretion is based on the facts of the case, those factual findings must be supported by substantial evidence.  (*Ibid.*; *In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327.)  We do not reweigh the evidence or make determinations as to credibility (*ibid.*), and "view[ ] the entire record in the light most favorable to the prevailing party . . . resolv[ing] all conflicts in the evidence and draw[ing] all reasonable inferences in favor of the findings." (*In re Marriage of Duffy* (2001) 91 Cal.App.4th 923, 931.)

    B.    *Child Support Order*

    Kelley contends the trial court erred by using the income information in William's 2014 declaration to calculate her child support award and "ignoring" William's more recent 2015 declaration.  Additionally, she argues the trial court should have used the law firm profit and loss statement filed with the 2015 declaration to attribute to William an additional monthly amount of $14,811.44 in self-employment income (based on his 95 percent ownership of his firm's reported net income) and $15,631.99 in perquisites (based on his firm's apparent payment of William's personal attorney's fees).

    It is undisputed that the trial court used the 2014 declaration as the basis for its child support guideline calculation, but it is unclear from the record before us why it did so.  Neither party contested the applicability of the 2015 declaration, although William's

counsel responded and objected to Kelley's arguments regarding the import of the profit and loss statement. Further, while William's 2015 declaration was filed after Kelley's reply brief, she raised no objection to its timeliness (and it was filed at her request). Both the court and the parties were clearly aware of it, as they discussed it in detail during the hearing. Indeed, the entire colloquy between both parties and the court during the hearing focused on the 2015 declaration and Kelley's counsel expressly requested that the court use the 2015 declaration and accompanying profit and loss statement as the basis for the child support calculation. The court did not object to using William's 2015 declaration, and gave no indication at the hearing that it intended to disregard this evidence. Despite the parties' agreement that the 2015 declaration would be used and their exclusive focus on those figures during the hearing, the court's order relied upon the 2014 figures without explanation.

Both the guideline statutes and the Rules of Court contemplate using income information that is current at the time of the support calculation. (See, e.g., § 4060 [court may adjust monthly net disposable income to "reflect the actual or prospective earnings of the parties at the time the determination of support is made"], Rule of Court 5.260 [requiring income and expense declarations completed within the past three months].) Here, the court had William's updated 2015 declaration in evidence before it. Moreover, the difference was not trivial—the income amounts reported in 2014 were different than the amount reports in 2015. Notably, the 2015 figures for William's income from dividends and Social Security were higher than the 2014 figures; of course, William's income also would increase significantly if the court were to accept any of Kelley's arguments imputing his law firm income to him. We therefore conclude that the trial court lacked substantial evidence for its factual findings, which were based on outdated income information. As such, the court's child support order was an abuse of discretion that must be corrected upon remand.

As noted, Kelley further argues that the court should have attributed additional income to William based on the profit and loss statement he attached to his 2015 declaration. The court did not discuss the merits of Kelley's arguments during oral

11

argument (other than to remark that Rale was "doing a very good job of walking me through the profit and loss statement and the [2015] declaration") or in its order. We need not decide for the first time in this appeal whether any or all of William's law firm income should be attributed to him. However, we note that—apart from claiming that Kelley "misunderstands" the profit and loss statement—William offers no authority or argument suggesting that these amounts could not be considered income "from whatever source derived" pursuant to section 4058. (See *Tharp, supra,* 188 Cal.App.4th at p. 1315 [including corporation's payment of husband's legal expenses as income].) Further, William's contention that the figures on the profit and loss statement were not an accurate reflection of the current state of his law firm is devoid of any citation to evidence in the record and ignores the fact that he submitted the document as evidence purporting to represent his current financial condition.[9]

As such, we find it appropriate to reverse the child support order and remand for further consideration.

C.      *Denial of Additional Attorney's Fees*

Kelley also challenges the trial court's order denying her request that William pay her attorney's fees and costs pursuant to section 2030. She claims that she demonstrated a need for such contribution and that the fees requested were reasonable. Because the court's determination was also based on William's 2014 income information, we conclude this order must be reversed as well.

Section 2030 requires that the trial court "ensure that each party has access to legal representation . . . by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending

---

[9]William also appears to argue that the court could have used the 2015 declaration but ignored the accompanying profit and loss statement. However, it is undisputed that the court used the figures from William's 2014 declaration. For example, the numbers entered in the court's DissoMaster report for William's self-employment, social security and dividend interest income match the corresponding amounts reported in the 2014 declaration and differ from those reported in the 2015 declaration.

12

the proceeding during the pendency of the proceeding." (§ 2030, subd. (a)(1).) This section "reflects the public policy of providing, ""'at the outset of litigation, consistent with the financial circumstances of the parties, a parity between spouses and their ability to obtain effective legal representation.'" [Citation.]' [Citation.]" (*In re Marriage of Sharples* (2014) 223 Cal.App.4th 160, 164.) Accordingly, section 2030 expressly requires the court to "make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties." (§ 2030, subd. (a)(2).)

The trial court may make an award under section 2030 only "where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties." (§§ 2030, 2032, subd. (a).) In making its determination, the court "shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320." (§ 2032, subd. (b).) Section 4320 sets forth a nonexhaustive list of circumstances for the court to consider, including the ability of the supporting party to pay, the needs of the recipient party, the obligations and assets of each party, the ability of the supported party to engage in gainful employment, the age and health of the parties, the balance of hardships to the parties, and any other factors the court deems just and equitable. (§ 4320, subds.(c), (d), (e), (g), (h), (k) and (n).)

Kelley first argues that the trial court "failed to make a finding as to whether or not there was a disparity in access and ability to pay attorney's fees and costs" pursuant to section 2030. We disagree. Both the court's statements during the hearing and its written order demonstrate that the court assessed the respective incomes and assets of the parties and determined that Kelley had not established a need for an additional award of fees.

13

However, as was the case with the child support order, the court's factual findings were not based on substantial evidence. In comparing the parties' incomes, the trial court relied on the 2014 declaration to establish William's income and concluded, based on the resulting DissoMaster report, that Kelley had about half of the "total combined spendable income" between the parties. To the extent the court adjusts William's income based on the 2015 declaration (or an updated declaration upon remand), it must necessarily reevaluate the equities and determine whether a further attorney's fees award is warranted. We also note that William's 2015 declaration reported additional assets, as well as an inheritance of over a million dollars, all of which the court may consider as part of the disparity analysis under section 2030.

We reject Kelley's contention that it was an abuse of discretion for the court to consider the "loans" she received from friends and family as income for the purposes of evaluating her need for fees. As she herself urges with respect to William's finances, in determining parity between the parties, section 2032 "not only requires that the court consider the financial resources of each party, but also requires a broader analysis of the parties' relative circumstances." (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1056.) Thus, as part of its disparity analysis, the court could properly consider evidence that Kelley was receiving thousands of dollars per month from family and friends to assist with her living expenses and legal fees, none of which had any reported repayment date. (See *In re Marriage of Smith* (2015) 242 Cal.App.4th 529, 534 ["It was well within the trial court's discretion to consider such regular, substantial infusions of cash as part of its determination of the relative circumstances of the respective parties and their ability to maintain or defend the proceedings."])

The cases cited by Kelley do not hold otherwise. *In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 737 (*Alter*) upheld the trial court's finding that monthly payments of $6,000 to the husband from his mother were gifts that could be considered as income for purposes of calculating child support. Thus, "where a party receives recurring gifts of money, the trial court has discretion to consider that money as income" to the party. (*Id.* at pp. 722-723; see also *Kevin Q. v. Lauren W.* (2011) 195 Cal.App.4th 633, 646–647

14

[regular monthly monetary gifts from parent constituted income for purpose of determining appellant's ability to pay attorney fees].)  Kelley also cites to *In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, 1315, which affirmed the trial court's determination that past cash advances received from the husband's family would not be included as income in determining the amount of his child support obligation.  The court in *Williamson* acknowledged the holding in *Alter, supra*, 171 Cal.App.4th at p. 736, that "regular gifts of cash may fairly represent income," but concluded the gifts in its case were distinguishable.  (*Williamson, supra*, 226 Cal.App.4th at p. 1314.)  In particular, the *Williamson* court noted that the cash advances were made irregularly from year to year upon request, and, "more importantly," the husband's father had testified that he was no longer making the payments and had no plans to do so in the future. (*Id*. at pp. 1314-1315.)  As such, the court found it was not an abuse of discretion for the trial court to "exclude the historical parental cash advances as income." (*Id*. at p. 1315.)

Here, by contrast, while Kelley now argues that the "uncontradicted" evidence established that she "received such cash <u>sporadically</u> to meet her living expenses or litigation costs," she ignores the income and expense declaration she submitted, in which she reports receiving approximately $7,000 per month from family and friends to help pay her expenses.  The trial court did not abuse its discretion in considering these recurring payments as a source of income for Kelley relevant to its analysis of her attorney's fees request.

The court also found Kelley had not met her burden to establish the reasonableness of the fees she sought.  At a minimum, Kelley argues she was entitled to some amount for the fees incurred related to child custody and support, as well as fees to pursue her breach of contract action.[10]  William argues that the $25,000 in fees he already paid should be reallocated to child support and custody (the only allowable items under the prenuptial agreement), and that this amount should be sufficient to cover those two

---

[10]Kelley provides no explanation as to how she would be entitled to fees related to her breach of contract claim, where the prenuptial agreement allows such fees only to a prevailing party and she has not yet prevailed on her claim.

areas.  It is clear the court was dubious about the amount of fees Kelley claimed, particularly given the broad waiver in the prenuptial agreement and the limited litigation on the nonwaivable issues.  However, neither party provides any supporting authority concerning the reallocation issue, and it is unclear from the record whether the trial court considered it.  As such, we remand to the trial court for further consideration if necessary following its findings regarding Kelley's need for fees.

## DISPOSITION

The order awarding temporary child support and denying attorney's fees and costs is reversed.  The matter is remanded for recalculation of child support and further consideration of Kelly's request for attorney's fees consistent with this opinion.  The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


EPSTEIN, P. J.


WILLHITE, J.

16