Filed 12/22/23  Sandoval v. Hupp CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| DENNIS SANDOVAL, as Successor Trustee, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> PAUL HUPP, <br><br> Defendant and Appellant. | E077464 <br><br> (Super.Ct.No. PRIN2100300) <br><br> OPINION |

APPEAL from the Superior Court of Riverside County.  John G. Evans, Judge.

Affirmed.

Paul Hupp, in pro per, and for Defendant and Appellant.

Dennis M. Sandoval, in pro per, and for Plaintiff and Respondent.

1

Paul Hupp, the primary beneficiary of his mother's trust, appeals from an order granting the petition filed by Dennis Sandoval to confirm Sandoval as successor trustee, to approve his proposed acts in that capacity, and to fix his compensation above that specified in the trust. (Prob. Code, §§ 15680, 17200, unlabeled statutory citations refer to this code.) We conclude that all of Hupp's arguments lack merit, and we accordingly affirm.

## BACKGROUND

A.  *The Trust*

Hupp's mother, Aristea Hupp[1], created the Revocable Living Trust of Aristea Hupp in September 1994 and amended it for the third and final time in March 2020 (the trust). Hupp is the primary beneficiary of the trust, the assets of which include two single family residences in Beaumont, a condominium in San Diego, a checking account, a savings account, and an individual retirement account. Upon Aristea's death, the trustee is required to satisfy the expenses and claims against the estate. If trust income or assets remain after such payments, the trustee must make specific, personal property distributions to Aristea's daughter (Leslie Ryder) and granddaughters. After those specific distributions, the trustee has discretion to distribute to Hupp "as much of the [trust] income and principal" as the trustee "determines necessary or advisable for [Hupp's] health, education, maintenance or support." The trust contains a no-contest clause prohibiting any party from challenging the trustee's decisions regarding

---

[1]  Because she and Hupp share the same last name, we refer to Aristea by her first name to avoid confusion. No disrespect is intended.

2

distributions to Hupp.  Finally, the trust gives the trustee broad powers to manage and dispose of trust property for the benefit of the estate.  As relevant here, the trust permits the trustee to sell trust property "[w]ith or without court authorization" and to prosecute, pay, or settle "any claim against the trust."

Aristea named her niece, Lisa Shiozaki, first successor trustee, and her daughter, Ryder, second successor trustee.  Under the terms of the trust, if Shiozaki and Ryder are unwilling or unable to serve, then they may select a professional fiduciary to serve in their place, and if they are unable to make that selection, then the court must appoint a new trustee.  The trustee may resign at any time without giving a reason, and any beneficiary or cotrustee may petition the court to remove the trustee on specified grounds, including breach of trust.  The trust sets the trustee's compensation at $50 per hour.

Aristea died on April 12, 2020.  One month later, Shiozaki resigned as trustee, Ryder declined the position, and the two of them selected Sandoval, a licensed attorney and professional fiduciary, to serve as trustee.  On May 13, 2020, Sandoval executed a witnessed and notarized acceptance of trusteeship.

B.     *The Petition*

In March 2021, Sandoval filed a verified petition under section 17200, asking the court to confirm his position as trustee, to approve certain acts, and to fix his compensation at rates of $250 per hour for litigation-related trust work and $175 per hour for all other trust tasks, with lower rates for work done by another professional fiduciary under Sandoval's supervision ($150 per hour) and for secretarial or bill-paying services

3

($35 per hour). The petition sought approval to sell the trust's real property and use the proceeds to pay off the estate's debts and settle outstanding litigation, which, according to the petition, included Hupp and Aristea's lawsuit against their former homeowners association (Solera Oak Valley Greens Association) and various former neighbors (the Solera suit). The petition sought approval to use any leftover funds to purchase for Hupp a new residence located outside the Solera community and, if there were still funds remaining, to provide Hupp with a monthly distribution.

Regarding the proposed fee schedule, the verified petition stated that the increased rates were reasonable because administration of the trust had become more difficult than originally contemplated as a result of Hupp's uncooperative and litigious behavior. The petition attached recent orders from federal court and Riverside County Superior Court declaring Hupp a vexatious litigant. The petition stated that Hupp had not responded to Sandoval's attempts to discuss trust issues with him and had instead tried to file a lawsuit against Sandoval, Shiozaki, and Ryder in federal court. According to the petition, the court rejected the filing because of Hupp's status as a vexatious litigant. The petition stated that Hupp's litigiousness was the reason Shiozaki resigned and Ryder refused to serve as trustee, and it was also the reason Shiozaki and Ryder could not find a professional fiduciary willing to serve as trustee for a rate of $50 per hour.

Hupp filed an opposition to the petition, arguing that Sandoval breached his fiduciary duty to the trust "in every conceivable and possible way." The opposition did not address the proposed acts or the terms of the trust. Rather, Hupp used the filing to

4

argue that Sandoval, Ryder, and Shiozaki had committed various felonies, to disparage this court and the probate court with insults and profanity, and to threaten to kill Sandoval. Under the heading "Conclusion," the opposition stated, "SANDOVAL is not going to 'negotiate' anything related to TRUST. . . . If SANDOVAL does, [Hupp] is going to blow SANDOVAL'S head off. Is that clear to you SANDOVAL? You are not going to engage in anymore fraud . . . from here on, and if you do you are going to get your motherfucking head blown off. You're now on notice SANDOVAL, your little punk ass proceeds at your own peril from here on."

In May 2021, the trial court held a hearing on the petition, and both parties appeared telephonically. Sandoval told the court that one of the reasons he had filed the petition was to get an opportunity to speak with Hupp, as Hupp seemed willing to communicate only through litigation. "I filed what I filed here . . . with the hope that Mr. Hupp would make an appearance so that I can try to get him to understand that . . . I'd like to communicate with him if he will respond to my e-mails, to my phone calls, or to my letters because . . . I've gotten no response other than filing of court papers." Hupp responded that he objected to the petition on the basis of the arguments in his opposition. The court took the matter under submission and on June 29, 2021, issued a written order granting the petition in full.

Hupp, who represents himself on appeal as he did in the probate court, timely appealed from the court's order. At some point before he filed his opening brief, Hupp

5

was convicted of criminal threats and elder abuse in Riverside County and was incarcerated.[2]

## DISCUSSION

A trustee may file a petition in the probate court to approve certain actions, "including the exercise of discretionary powers," and to fix compensation. (§ 17200, subds. (b)(5), (9).) The probate court, "in its discretion[,] may make any orders and take any other action necessary or proper to dispose of the matters presented by [such a] petition." (§ 17206.) On appeal from an order granting a petition brought under section 17200, we independently construe the terms of the trust and review the probate court's decision for abuse of discretion. (*Burch v. George* (1994) 7 Cal.4th 246, 254 ["The interpretation of a will or trust instrument presents a question of law"]; *Estate of Billings* (1991) 228 Cal.App.3d 426, 430 ["the discretion is that of the trial court, and we will only interfere with its ruling if we find that . . . no judge reasonably could have reached the challenged result"].) We presume the court's order is correct, and it is the appellant's

---

**2** This appeal was submitted on October 31, 2023, after we issued our tentative opinion and neither party requested oral argument. The following day, Hupp filed a late request for oral argument, and on November 3, 2023, we issued an order vacating submission and allowing the parties to file written statements in lieu of oral argument. (See *Hoversten v. Superior Court* (1999) 74 Cal.App.4th 636, 642 [a prisoner does not ordinarily have the right to appear personally in court on civil matters, but courts have broad discretion to devise alternative means to give prisoners meaningful access to the courts].) Hupp did not file a written statement by the deadline of December 4, 2023. On December 18, 2023, Hupp attempted to file a letter asking for an update on a request for a continuance of oral argument that he claimed to have filed on some earlier, unspecified date. We have no record of such a request. We rejected Hupp's letter because the matter was submitted when he failed to file a written statement. (Cal. Rules of Court, rule 8.256.)

6

burden to demonstrate reversible error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*).)

Hupp's arguments for reversal fail to demonstrate error. As an initial matter, Hupp appears to challenge Sandoval's standing to file the petition, asserting that Sandoval is not the proper trustee because Hupp had "no input" in selecting him. However, the trust does not give Hupp any say in the matter. The authority to select the trustee lies with Shiozaki, Ryder, and the probate court. Sandoval was selected by Shiozaki and Ryder, in accordance with the terms of the trust. If Hupp believes that there are legitimate reasons why Sandoval should not serve as trustee, his recourse is to file a removal petition under section 17200. (§ 17200, subd. (b)(10).)

Next, Hupp contends that the probate court erred by failing to "make rulings on" the "legion of facts" that he presented in his opposition to the petition. The "facts" that Hupp is referring to are his numerous allegations of wrongdoing against Sandoval, Shiozaki, and Ryder. Those statements are merely unsupported, conclusory allegations that have no bearing on the issues presented by the probate court's decision. Consequently, they provide no basis for reversal. (See *Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 826-827 & fn. 1 (*Sheily*) [reviewing courts may disregard arguments not supported by citation to the record].)

We also reject Hupp's claim that increasing the trustee's compensation to "a ridiculous $350/hour" constitutes reversible error because Sandoval is in collusion with the homeowners' association to help it succeed in the Solera suit. The court did not

7

approve a rate of $350 per hour, and in any event, Hupp provides no support for his claim of collusion. (*Sheily*, *supra*, 122 Cal.App.4th at pp. 826-827 & fn. 1.)

Under a heading entitled "No Written Statement of Decision," Hupp claims that reversal is required because the court failed to "explain or support [its] ruling." We disagree. A party is not automatically entitled to a statement of decision every time a court makes a ruling. Rather, a statement of decision is required only for certain rulings and only if a party requests one, which Hupp never did. (Code Civ. Proc., § 632 [when there has been a "trial of a question of fact," the court must issue "a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party"]; see also *Lien v. Lucky United Properties Investment, Inc.* (2008) 163 Cal.App.4th 620, 623-624 ["The requirement of a written statement of decision generally does not apply to an order on a motion, even if the motion involves an evidentiary hearing and even if the order is appealable"].) Moreover, Hupp cites no authority for his claim that the probate court was otherwise required to state the "legal analysis" on which the court's ruling was based, and we are aware of none. "'[A]n appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim. The appellant must present an adequate argument including citations to supporting authorities and to relevant portions of the record.'" (*Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 162 (*Ribakoff*).) That rule applies to self-represented litigants like Hupp. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; *Huang v. Hanks* (2018) 23 Cal.App.5th 179, 183 & fn. 1.)

8

Next, Hupp argues that his ability to pursue his appeal was impeded by his incarceration and that appellate counsel should have been appointed for him "at trust expense." Specifically, he claims that he had "no way to research case or statutory law" and that he lacked access to the appellate record because "the jail facility destroyed" his copy and this court "failed to secure new copies" for him. We are not persuaded. The trust does not authorize the hiring of counsel for Hupp at the trust's expense. And as we explained in our August 2022 order denying Hupp's multiple requests for appointment of appellate counsel, Hupp has no constitutional right to appointed counsel in this case because he was not sued in this case (among other reasons). (*Payne v. Superior Court* (1976) 17 Cal.3d 908, 919, 924; *Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 793.) As for Hupp's claim of inadequate resources, his filings in this case and in his other appeals currently pending before us contradict his assertion that he is unable to conduct legal research while incarcerated.

Regarding the record, Hupp's uncorroborated assertion that he lacked adequate access to the transcripts has no tendency to carry his burden of showing that the order he challenges on appeal was erroneous or that any error in it was prejudicial. (*Denham*, *supra*, 2 Cal.3d at p. 564; *Ribakoff*, *supra*, 27 Cal.App.5th at p. 162.) First, one of Hupp's own filings negates his claim of prejudice. On May 6, 2022, Hupp filed a motion requesting that we provide him with replacement copies of the reporter's transcript and the clerk's transcript. His motion stated that the only reason he needed access to the reporter's transcript was to "verify as a fact" that the trial court allowed two attorneys

representing the homeowners' association in the Solera suit to appear at the hearing on Sandoval's petition. His motion also stated that the only reason he needed the clerk's transcript was to prove that a minute order dated January 26, 2021 "was never served on [him]." Rather than show that his lack of access to the transcripts prejudiced his appeal, those statements demonstrate that Hupp would have used the transcripts to make irrelevant arguments that have no bearing on the merits of the challenged order.

Second, the record does not indicate that Hupp diligently pursued any available remedies for his alleged lack of access to the transcripts, or that the trial court or this court committed error by failing to facilitate greater access to those transcripts. On May 24, 2022, we denied Hupp's May 6 motion, stating that he should "follow the procedures of the appropriate correctional institutions in order to retrieve his transcripts." On August 11, 2022, Hupp filed a motion for appointment of counsel in which he raised the missing transcripts issue again, stating that jail staff had taken his files and "apparently disposed of them" and that he had filed numerous "grievances over his 'missing' papers and supplies." On August 23, 2022, we denied that motion, explaining that Hupp was not entitled to appointed counsel and reiterating that he should follow the correctional facility's administrative procedures for requesting access to his documents "or file a petition for writ of mandate if that fails." In the following months, Hupp made numerous motions and requests, but he never again asked us for replacement copies of the transcripts, informed us of his efforts to obtain copies, or explained why those efforts

were unsuccessful. For all of these reasons, Hupp has not shown that lack of access to the record prejudiced his ability to prosecute this appeal.

Finally, Hupp requests that we take judicial notice of two matters—a case that he describes as "DCA case Hupp v. Solera Oak Valley Greens Assoc. et al, case E073103" and a lawsuit against Solera that he claims to have "lodged" in the Riverside County Superior Court on July 10, 2020. We deny the request because Hupp failed to state why those matters are relevant to this appeal and whether they were presented to the trial court, as required by the California Rules of Court. (Cal. Rules of Court, rule 8.252(a)(2).)

Putting aside Hupp's arguments, we have reviewed the augmented record on appeal and see no arguable grounds for reversal. Shiozaki and Ryder selected Sandoval as trustee, as expressly authorized by the trust instrument. Sandoval sought to sell the real property owned by the trust, to use the proceeds to settle the estate's debts and litigation, and to use any remaining funds to purchase a residence for Hupp and provide him with monthly distributions. All of that is consistent with the terms of the trust. The trust requires the trustee to "pay any outstanding claims and expenses" on behalf of the estate, and the trust authorizes the trustee to sell trust property to pay, contest, or settle any claim against the estate, as well as to make discretionary distributions to Hupp. Because the trust either required or expressly authorized Sandoval to undertake each of the proposed acts, the court acted reasonably in approving them.

11

As regards compensation, section 15680 authorizes the court to "fix or allow greater or lesser compensation than could be allowed under the terms of the trust" under certain circumstances, such as when "the duties of the trustee are substantially different from those contemplated" or "compensation in accordance with the terms of the trust would be inequitable or unreasonably low." (§ 15680, subd. (b).) Rule 7.776 of the California Rules of Court provides a list of additional factors a probate court may consider when presented with a request to increase compensation. The list includes "[a]ny unusual skill, expertise, or experience brought to the trustee's work," the "amount of risk and responsibility assumed by the trustee," and the "charges of corporate trustees for trusts of similar size and complexity." (Cal. Rules of Court, rule 7.776(3), (5), (7).)

In view of those factors, the court did not abuse its discretion by concluding that Sandoval's proposed fee schedule was reasonable. Sandoval submitted a verified petition explaining why the duties of administering the trust would be substantially different from those originally contemplated, namely, managing the trust's assets and making discretionary distributions to Hupp. According to the petition, Sandoval not only must defend or settle the Solera suit (which Hupp initiated) but also must work with a hostile primary beneficiary who has already been declared a vexatious litigant and who makes death threats when he does not get what he wants. Moreover, the court could reasonably conclude that because Sandoval is a licensed attorney he has skills and experience that will be useful in carrying out those tasks.

For all of these reasons, we see no arguable basis on which we could conclude that the trial court abused its discretion.

DISPOSITION

We affirm the order granting Sandoval's petition.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

MILLER
Acting P. J.

RAPHAEL
J.

13