[Civ. No. 594. Fourth Appellate District.—December 10, 1931.]

AUGUST ANDERSON, Respondent, v. HELEN LEA BROADWELL et al., Appellants.

L. G. Shelton for Appellants.

J. E. Ricketts and Walter C. Maloy for Respondent.

BARNARD, P. J.—This action and two companion cases (*Anderson* v. *Broadwell, post,* p. 150 [6 Pac. (2d) 267]; *Broadwell* v. *Anderson, post,* p. 145 [6 Pac. (2d) 269]) involve the title to three pieces of real property situated in Los Angeles County. The three cases were consolidated for trial and, while separate judgments were entered and

separate appeals taken, by stipulation, all three cases have been here presented upon a single transcript and one set of briefs. All of the parties are closely related and, as frequently happens in such cases, the actions have been fought with much zeal and some bitterness. The plaintiff, August Anderson, is the brother of the defendant Sofie A. Broadwell, who is the widow of W. B. Broadwell. The defendant Helen Lea Broadwell is the daughter of Sofie A. Broadwell and the niece of the plaintiff.

The plaintiff and his brother-in-law W. B. Broadwell, now deceased, had been friends for forty years and during most of that time they had either been partners in operating stores in various localities in California and Nevada, or the plaintiff had been employed by his brother-in-law in operating such stores. The plaintiff, however, had been something of a wanderer, living most of the time in desert towns or in mining districts. In 1916 the plaintiff closed out a business he had in Arizona and decided to go to Mexico. At that time he owned an acre of land on Signal Hill in Long Beach, and a lot at San Pedro. According to the evidence the Long Beach property was then worth $2,500 and the San Pedro property from $2,500 to $3,000. In December, 1916, he mortgaged the Long Beach property for $500, payable in three years, and the San Pedro property for $750, payable in three years, after which he gave Broadwell his power of attorney, left $500 in his hands with which to take care of his business, and went to Mexico. In August, 1917, the plaintiff returned and went to work for Broadwell as manager of his store in Hemet, California. Shortly after this, an arrangement was made between them which the plaintiff testified to as follows:

"Mr. Broadwell told me that we should clear up the titles to the properties in Long Beach and San Pedro that I owned at that time; and I told him I was willing. And I made a proposition, if he would pay off the mortgages and the indebtedness against the property—there was some street assessments on the San Pedro property; the Long Beach property was clear; and I told him I would give him a half interest in the property for paying off the mortgages. He said, 'All right; you deed them over to me, and I'll take care of it; and then when it is all settled up and cleared up, I

will deed half of it back to you.' And he being my brother-in-law, I did.''

The plaintiff conveyed to Broadwell the Long Beach property by a deed dated October 4, 1917, and the San Pedro property by a deed dated January 14, 1918. The record shows that an action which had been brought to foreclose the mortgage on the Long Beach property was dismissed November 17, 1917; that the mortgage on the San Pedro property was released on February 13, 1920; and that a delinquent tax sale for the year 1918 was redeemed August 22, 1921. The plaintiff continued as manager of Broadwell's Hemet store for seven years and late in the fall of 1924 again went to Mexico, returning to California in the fall of 1927. In the meanwhile Broadwell died, on February 28, 1926, and it is conceded that his estate was probated and that the real estate involved in these actions was distributed to his widow. Helen Broadwell, the daughter, claims to have received deeds from her mother covering the properties in question, although the deeds were not admitted in evidence.

This particular action relates to the Long Beach property. In the complaint, filed October 23, 1928, a first cause of action contains the usual allegations of a quiet title suit. In the second cause of action it is alleged that the plaintiff, prior to October 14, 1917, was the owner of the real property in question; that on that date he conveyed the same to Broadwell who was then his brother-in-law and in whom he reposed great trust and confidence; that the property was so conveyed upon the express condition, agreement and understanding between them that the said Broadwell would pay and procure the release of records of certain encumbrances upon the two pieces of real property, and would thereafter hold an undivided one-half interest in the same for the use and benefit of the plaintiff; that on September 16, 1921, the said Broadwell and his wife leased the property to the Shell Oil Company, a corporation; that on December 13, 1922, in pursuance of the agreement and understanding between them, the said Broadwell executed and delivered to the plaintiff a grant deed conveying to him an undivided one-half interest in and to the property, which deed was recorded; and that on September 2, 1924, a written agreement was executed, acknowledged and recorded, wherein it

was expressly agreed that the said Broadwell and the plaintiff were each the owners of an undivided one-half interest in the real property in question. It is then alleged that by reason of the lease referred to and the drilling of oil-wells upon the property, large sums of money were received by Broadwell as royalties, which amounts were equally divided between Broadwell and the plaintiff up to July 21, 1924; that on that date an agreement was made between them whereby Broadwell should collect and receive such royalties and should hold the plaintiff's one-half thereof for his use and benefit, to be repaid to the plaintiff on demand, together with interest at six per cent; that Broadwell died on February 28, 1926; that since that time the defendants have received and collected all of said royalties, the amount of which is unknown to the plaintiff; that the plaintiff is entitled to one-half of said moneys; and that neither of the defendants have paid to the plaintiff any part of the same. The prayer is that the defendants be required to set forth the nature of their several claims; that the plaintiff's title to a one-half interest in the property be quieted; that the defendants be adjudged to hold one-half of all royalties received by them in trust for the plaintiff; and that the plaintiff have judgment for one-half of said royalties when the amount thereof is determined.

In their answer, the defendant Sofie A. Broadwell disclaims any interest in the property and alleges that the defendant Helen Lea Broadwell is the owner and in the exclusive possession thereof. The defendant Helen Lea Broadwell denies practically all of the allegations of the complaint which tend to show any interest in the property in the plaintiff, and alleges that the property was conveyed absolutely by the plaintiff to Broadwell without condition and that the same was the community property of W. B. Broadwell and Sofie A. Broadwell. It is then alleged that the plaintiff's cause of action is barred by the various statutes of limitation.

The court found that the plaintiff was the owner of the property on October 14, 1917, and on that date conveyed the same to Broadwell by grant deed; that Broadwell had then been the brother-in-law of the plaintiff for more than thirty years; that for more than thirty years prior thereto, except for brief intervals, the plaintiff had been associated

in business with Broadwell; that at that time the plaintiff was employed by Broadwell as manager of his store at Hemet; that the plaintiff and Broadwell mutually reposed great trust and confidence in each other; and that prior to the execution and delivery of the deed, Broadwell had expressly agreed with the plaintiff that he would pay off and cause to be released of record certain encumbrances upon the real property and would thereafter hold an undivided one-half interest in the same for the use and benefit of the plaintiff, and would thereafter reconvey a one-half interest therein to him. The court also found that on September 16, 1921, with the consent of the plaintiff, Broadwell leased the property to the Shell Oil Company, in which lease Sofie A. Broadwell joined as the wife of W. B. Broadwell; that an undivided one-half interest in the real property was and became their community property, and the other undivided one-half interest in said real property was held in trust by Broadwell for the plaintiff; that Sofie A. Broadwell at no time had any right or interest in the undivided one-half of said real property so held in trust; that in so far as the one-half interest was concerned, the said Broadwell entered into the lease with the Shell Oil Company for the use and benefit of the plaintiff; that oil was discovered on the property and from August 16, 1922, until the death of Broadwell in February, 1926, checks for royalties were sent to Broadwell regularly each month; that between December 16, 1922, and August 19, 1924, eleven of said checks were indorsed by Broadwell and his wife and sent to the plaintiff, and were by him deposited in a savings account in a bank at Hemet in the name of Anderson & Broadwell; that four other such checks were likewise sent to him and deposited by the plaintiff in a savings account in a bank at San Pedro in the name of Anderson & Broadwell; that these checks aggregated $13,840.37; and that in addition thereto, a further sum of $2,130.95 from the same source was deposited in the Hemet bank in the name of Anderson & Broadwell. The court also found that on December 13, 1922, in performance of and in pursuance to their agreement and understanding, and on the demand of the plaintiff, Broadwell executed and delivered to the plaintiff an instrument reading as follows:

"This indenture, made and entered into this 13th day of December, 1922, by and between Walter B. Broadwell, party of the first part and August Anderson, a single man, party of the second part.

"Witnesseth: That for and in consideration of the sum of Ten ($10.00) Dollars, an undivided one-half interest, and is as a part of the consideration that during the life of both the Grantor and Grantee, the title to the property may not be transferred, sold, leased or mortgaged or assigned or encumbered in any way save by the consent of both parties. That is that title if as above must pass by the consent of both, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties of the first part do hereby grant to the party of the second part, the following described real property, (here follows description).

"To have and to hold to the party of the second, his heirs and assigns forever.

"In witness whereof, the parties of the first part have hereunto subscribed their names and seals, the day and year in this instrument first above written.

"WALTER B. BROADWELL."

This instrument was acknowledged and recorded on July 7, 1924. The court also found that on September 2, 1924, a written agreement was executed and delivered, reading as follows:

"Agreement
"Covina, California,
"September 2nd, 1924.

"It is agreed between W. B. Broadwell, the party of the first part, and August Anderson, the party of the second part, first: that a certain 4½ of five acres of land at Arcadia and on record in the name of R. A. Broadwell, A. Anderson and W. B. Broadwell, in Los Angeles County, first: that the interest of A. Anderson is a one half interest and the interest of the other two is a one half interest; second, that a certain business block at 111 Pacific Avenue, San Pedro, described as Lot 26, Block 2, Arcadia Park Tract, San Pedro and on record in the name of W. B. Broadwell and A. Anderson, that the interest of each is a one half interest; third, that a certain oil lease at Signal

Hill, known as the Crisson Community Lease, that the interest of each of the two parties above mentioned, W. B. Broadwell and A. Anderson is a one half interest each.

"(Signed)   W. B. BROADWELL,

"A. ANDERSON."

This instrument was acknowledged and recorded on September 5, 1924. The court found that no action was ever commenced by Sofie A. Broadwell to cancel either of said instruments; that no claim to the said undivided one-half interest in the real property and in said oil and gas lease adverse to the plaintiff was made by Sofie A. Broadwell or Helen Lea Broadwell until the month of December, 1927; that W. B. Broadwell died testate on February 28, 1926; and that during his lifetime he admitted, and never to the knowledge of the plaintiff denied, the claim of the plaintiff to an undivided one-half interest in the real property in question and in the oil lease covering the same. The court further found that from December, 1924, until October, 1927, the plaintiff was living in Mexico and that he did not return to California until long after the estate of Broadwell had been settled and destributed; that he knew of the death of Broadwell; that the defendant Sofie A. Broadwell had disclaimed any right or interest in or to the one-half interest in the real property claimed by the plaintiff; and that the defendant Helen Lea Broadwell has no right or interest in or to said one-half interest. It was further found that on October 14, 1917, the real property in question was of the value of not less than $2,500; that the encumbrances thereon did not then exceed the sum of $750; that all amounts paid by W. B. Broadwell were in fact less than the value of the one-half interest in said land intended to be conveyed to him; and that the other one-half interest in the real property in question was never at any time the community property of Broadwell and his wife. The court further found that on July 21, 1924, the plaintiff and Broadwell entered into an oral agreement by the terms of which Broadwell should collect all royalties from the oil lease and should hold the plaintiff's one-half thereof for his use and benefit, to be repaid to him on demand with interest at six per cent; that the said Broadwell collected said royalties until the day of his death; that shortly after the making of said agreement the plaintiff

went to Mexico; that no claim for his share of such royalties was presented by the plaintiff to the executor of Broadwell's estate; that within two years of the commencement of this action the defendants collected and received certain specific royalties from the Shell Oil Company; and that the plaintiff's cause of action was not barred by the various statutes of limitation. Judgment was entered that the plaintiff is the absolute owner of the one-half interest in question, quieting his title thereto, and for an amount equal to one-half of the royalties collected by the defendants after the death of Broadwell. From that judgment this appeal is taken.

It is first argued that the judgment cannot be sustained upon the theory of a trust of any kind. Many citations and arguments are set forth showing the fine technicalities that are sometimes necessarily used in passing upon the various kinds of express, constructive and resulting trusts. Most of these, while in the main correct, are not applicable to the case before us. ■ Appellants' main contention upon this point is that there could have been no constructive trust because no fraud was shown. If it could be held that the property had not been conveyed back to respondent by Broadwell, we think the circumstances here shown would establish an involuntary or constructive trust within the meaning of section 2224 of the Civil Code, since the failure of Broadwell to reconvey the property in accordance with his agreement, would be a sufficient showing of fraud (25 Cal. Jur. 159, sec. 31, and cases cited). ■ However, the trial court found that while Broadwell at first held the property in trust for the respondent, and while so holding it leased it to an oil company for the mutual benefit of both, he later conveyed a one-half interest in the property to the respondent, in pursuance of his agreement, and the court drew the conclusion of law that the respondent was the owner of an undivided one-half interest therein. In our opinion, these findings are supported by the evidence and the conclusion drawn is correct. The respondent testified that he first deeded the property to Broadwell upon his agreement to clear up the encumbrances and later reconvey to him a one-half interest. The last of the encumbrances was not released from record until August 22, 1921. On December 13, 1922, the very date on which the lease to

the oil company was recorded, Broadwell executed and delivered to respondent the instrument above set forth. Appellants contend that this instrument was of no legal effect and conveyed no interest, with which contention we cannot agree. The instrument is in the usual form of a grant deed and purports to convey to the respondent an undivided one-half interest in the property in question. The only irregularity in its form is that, in reciting the consideration for which it was given, and as one of a number of considerations, it is set forth that the title to the property shall not be transferred or encumbered except by consent of both parties, so long as they both live. This provision was never violated and if it had any force at all, it ended upon the death of Broadwell. In our opinion, the insertion of this clause did not nullify the deed, and any attempted limitation upon a transfer, even if it ever had any validity, has expired. The granting clause is unequivocal. Courts are liberal in construing deeds so as to give them effect, and a deed is to be interpreted against the grantor and in favor of the grantee (8 R. C. L., 1049–1052, Deeds, secs. 103, 104; Civ. Code, sec. 1069). The subsequent conduct of Broadwell indicates that he interpreted this instrument as a deed. He sent to the respondent every one of the invoices which accompanied the royalty checks until respondent went to Mexico in August, 1924. Most of the Royalty payments were deposited in a bank in the name of Anderson & Broadwell. The payments that were not so deposited and which were retained by Broadwell were used by him in paying part of the cost of erecting a building on the San Pedro property, which will be considered in one of the other cases. A part of the money deposited in the bank in the name of Anderson & Broadwell was used to pay the rest of the cost of erecting this building; another large part was used in purchasing certain real property near El Monte, which property is involved in the third of these suits; and the balance of the money remaining in the bank was equally divided between Broadwell and the respondent, just before he went to Mexico. Broadwell again confirmed this interpretation when he included in the agreement of September 2, 1924, a statement that he and the respondent each had a one-half interest in the oil lease at Signal Hill.

■ It is contended by appellants that there was no consideration for the deed of December 13, 1922. The deed itself recites as a part of the consideration, that it was given for an undivided one-half interest in the property. It requires no further review of the evidence to show that an ample consideration existed for the making of the deed. ■ It is also insisted that the deed is void since it purported to convey community property and was not signed by Broadwell's wife, one of the appellants. Not only is it true, as found by the court, that Broadwell's wife did not bring any action within one year after the instrument was filed for record, in accordance with the terms of section 172a of the Civil Code, but it conclusively appears, as also found by the court, that in so far as this one-half interest in the property is concerned, it was never community property. During the time that title to this half interest remained in Broadwell, he held it in trust for the respondent and as the learned trial judge remarked during the course of the trial: "The property that we called community property can never rise higher than the fountain of title, and the fountain of title is impinged by a trust." It would further appear that in any event the appellants could not avail themselves of such a contention at this time, for the double reason that Sofie A. Broadwell has disclaimed any present interest in the property and that she has received a full half interest therein.

■ The next point raised by appellants is that respondent is estopped by laches from asserting any claim to the property in question. The only acts of the respondent relied upon as showing laches are that he paid no taxes on the property after 1917; that he made no claim to the property until this suit was filed; and that he permitted the property to be distributed in the estate of Broadwell. It appears that in August, 1924, Broadwell and the respondent divided the money left in their joint account, and that thereafter Broadwell received the royalties from the oil lease and rent from the building at San Pedro, until his death. The respondent testified that Broadwell had enough of his money on hand at all times to pay his share of the taxes, and we cannot find this denied in the record. The respondent went to Mexico in 1924 and the court found that he did not return to California until after the estate

was distributed. He returned to California in October, 1927, and the record shows all of the properties involved in these actions were distributed to the widow by a decree of partial distribution filed on February 15, 1927. We are referred to no evidence even indicating that the respondent knew that the property was being carried through the estate as having belonged entirely to Broadwell. The evidence shows that the encumbrances on the property were not removed of record until August 22, 1921; that the respondent demanded and received a deed to his half interest in December, 1922; that this deed was recorded; that an invoice of each royalty payment was sent to him as fast as received; that most of the royalty payments up to August, 1924, were received by him and deposited in a joint account, and that all of the proceeds from the oil lease up to August, 1924, were divided or expended with the respondent's consent upon projects in which he and Broadwell were jointly interested; that before he went to Mexico in 1924, the respondent demanded, received and recorded another agreement showing his interest in the properties; and that he then made an agreement with Broadwell for the handling of the proceeds of the oil lease and the rental from the San Pedro property during the time that he should be away. It further appears that the respondent did not return to California until about a year before this action was begun. It is in evidence that his claim was never disputed by Broadwell in his lifetime and that no dispute on the part of these appellants was brought to his attention until shortly before this suit was filed. The evidence shows that while he was in Mexico, in accordance with their agreement, Broadwell sent him $100 per month and that after his death this amount was sent him monthly for some time by the appellants. When they ceased to send him such amounts he returned to California, and when he first took the matter up with the appellants they merely told him he would have to wait until they got the money in the bank. Even if the claim of the respondent rested upon the establishment of a trust instead of upon a record title, in order to establish estoppel by laches it would be incumbent upon the appellants to show the lapse of an unreasonable time, knowledge upon the part of the respondent of the facts, and resulting prejudice to the appellants. None of these

elements here appear and we fail to see how the respondent could be required to have been any more diligent than he was in asserting his rights, under the circumstances shown by the record.

It is next insisted that this action is barred by the statute of limitations. Under the view we take, that a half interest in the property had been deeded back to the respondent, this defense is not available to the appellants. In any event, if it should be considered that the trust continued until the bringing of this action, the statutory time had not yet expired (*Taylor* v. *Morris,* 163 Cal. 717 [127 Pac. 66]; *Arnold* v. *Loomis,* 170 Cal. 95 [148 Pac. 518]).

Appellants urge that they have acquired a prescriptive title to the entire property in question. Not only is this disposed of by what we have previously pointed out, but it nowhere appears in the evidence that either Broadwell or his successors ever claimed adversely to the respondent until less than one year before this action was filed. It does not appear that Anderson neglected to pay the taxes for five years or that Broadwell paid such taxes out of his own funds. No tax receipts were admitted in evidence and the respondent testified: "Mr. Broadwell took care of all that business, being down at that end of it, and he took care of the taxes, supposed to pay the taxes for the different properties. He had plenty of money in his hands all the time that belonged to Anderson and Broadwell." It further appears that the appellants were not in possession of the property other than through the lease to the oil company, and that any constructive possession was participated in as much by the respondent as by them, through the various recorded instruments.

Without setting forth what statements are objected to, appellants urge that the trial court erred in admitting in evidence testimony as to the acts and declarations of the parties subsequent to the original deed from the respondent to Broadwell. By their objections the appellants raised the point that the deed from Broadwell to respondent dated December 13, 1922, was ambiguous, and the evidence which is apparently objected to was properly admitted for the purpose of clearing up this ambiguity. The particular acts or statements objected to not being pointed out, we do not

feel called upon to hunt out and comment upon each particular one.

A number of findings are objected to as not supported by the evidence. We have carefully examined all of these and each material finding is amply supported by the evidence. The matters pointed out by appellants raise no more than questions of conflicting evidence which have been decided adversely to them by the trial court.

■ Appellants complain of the failure of the trial court to find that Helen Broadwell was an innocent purchaser for value. Not only was no evidence at all introduced by the appellants of any title in Helen Broadwell but there is no evidence in the entire record which would have justified such a finding. Not only did she have constructive notice from the recorded instruments, but her own testimony shows that she had actual notice of the claims of the respondent and of the making of the agreement of September 2, 1924, on the very day it was executed, which was many years before she claims to have acquired the property from her mother by a deed which was never produced, the date of which she could not remember, and the consideration for which she could not remember other than the fact that it was "sufficient to make it legal".

■ It is next urged that respondent's claim is barred by his failure to do or offer to do equity, it being claimed that he made no offer to repay such taxes, assessments and other expense on the various properties as were paid by Broadwell and the appellants. It will have to be assumed, in the absence of evidence to the contrary, that these matters were adjusted in 1924, when the balance of their joint funds was divided. Thereafter, the respondent was in Mexico and by agreement Broadwell was to collect the royalties from the oil lease and the rentals from the buildings in San Pedro. No account of these matters was ever made so far as shown by the record, and the respondent's testimony that Broadwell at all times had sufficient of their funds in his hands to pay the taxes, is not contradicted. The record contains no proof of any amounts paid for taxes or other purposes by Broadwell or the appellants.

■ Two objections are raised to that portion of the judgment covering one-half of the amount of royalties from the oil lease collected by the appellants within two years

prior to the bringing of this action. It is first urged that this portion of respondent's claim is barred by his failure to present a claim therefor to the executor of the estate of Broadwell. The findings and the evidence show that the items which went to make up this portion of the judgment were for royalty payments made after the death of Broadwell, which never came to the hands of the executor but which were personally received by the appellants.
The other objection is that respondent failed to trace these royalty payments into any particular fund. This is completely answered by the stipulation of appellants' counsel that appellants received this money and spent it, and by the fact that the respondent, in that part of the action, is seeking only a money judgment and is not attempting to impress any particular fund with a trust. If, as we think, the court correctly found that the respondent was the owner of a one-half interest in the property and that he was entitled to half of the royalties derived therefrom, he was entitled to recover these amounts from the parties who received them.

The record in this case is very voluminous and not only are the material findings of the trial court supported by the evidence, but it is difficult to see how a contrary conclusion could have been reached in any court of equity.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.