Filed 10/11/23  Azar v. Azar CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| INDRAWOUS AZAR, et al.<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>SHIBLI AZAR, et al.,<br><br>    Defendants and Appellants. | A166609<br><br>(San Mateo County<br>Super. Ct. No. 18CIV01833) |

This case concerns an interfamilial dispute over the ownership of a residential property located in San Bruno ("the property").  Indrawous (known as "Andy"), his brother Simon Azar, and Andy's wife, Nadia Azar, are the plaintiffs in this case; we refer to Andy and Simon collectively as "plaintiff brothers."[1]  A third brother, Shibli Azar, and his wife Naifeh Azar, are the defendants.

Following a bench trial, the court granted judgment in favor of plaintiff brothers on their cause of action for a resulting trust; the court found plaintiff brothers were the real (beneficial) owners of the property and that defendants

---

[1]     To avoid confusion, and with no disrespect, we refer to the family members by their first names.

1

held legal title as trustees with no ownership interest.  Because Simon waived any beneficial interest in the property, the legal title was quieted and confirmed to beneficial owner Andy and Nadia as his wife.  The court also found, in pertinent part, that the resulting trust cause of action was not barred by the statute of limitations.

On Naifeh's prior appeal, we reversed the judgment as the statement of decision included impermissible and/or irreconcilable findings concerning the resolution of two material issues: (1) Shibli's apparent authority to act for Naifeh; and (2) Naifeh's intent to purchase the property in trust for Andy and Simon.  (*Azar v. Azar* (dec. Feb. 25, 2021, A159261) [nonpub. opn.].)  Because the court's decision on these two issues could not be separated from its rulings on the timeliness and merits of the resulting trust cause of action, we did not address Naifeh's challenges to those rulings.  (*Id*. at p. 2.)  We directed the trial court to issue a new statement of decision and judgment, noting our decision should not be read as expressing any opinion as to how the trial court should resolve the material issues submitted by the parties, including Naifeh's intent and Shibli's apparent authority to act for Naifeh.  (*Id*. at p. 8.)

The case was remanded to the trial court and reassigned to a new judge as the judge who previously handled the matter had retired.  A hearing was convened on July 12, 2022, at which plaintiffs and defendants were represented by counsel, to discuss the process moving forward.  Following argument, the court found all parties had agreed no further evidentiary hearing was necessary for the court to issue an amended statement of decision.

On August 22, 2022, the trial court issued its final statement of decision and judgment (one document), again imposing a resulting trust in

2

favor of plaintiff brothers and finding that defendants held legal title as trustees with no ownership interest. Because Simon waived any beneficial interest in the property, the legal title was quieted and confirmed to beneficial owner Andy and Nadia as his wife. The court also found, in pertinent part, that (1) the resulting trust cause of action was not barred by the statute of limitations, and (2) in light of the imposition of a resulting trust the court made no findings on a cause of action for breach of contract premised on the parties' alleged 1981 contract for the exchange of certain properties.

Naifeh filed a timely notice of appeal from the August 22, 2022 judgment. Having considered her arguments, we conclude she has not demonstrated any basis for reversal and shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

This action was commenced in 2018 to resolve a dispute over the ownership of the property, which had been purchased in 1976. Defendants never took possession of the property or lived in the house. Instead, plaintiff brothers moved into the house along with other family members and used it as their home for the next 40 plus years. At the time this lawsuit was filed, Andy and his wife Nadia were still living in the house.

### *Statement of Decision*

The trial court's final statement of decision detailed the findings in support of its conclusion that plaintiff brothers met their burden of showing,

---

[2] Because the record on appeal consists solely of a clerk's transcript with limited documents, and with no reporter's transcripts of the original bench trial or the July 12, 2022 remand hearing, our factual and procedural background is taken from our prior opinion (*Azar v. Azar* (dec. Feb. 25, 2021, A159261) [nonpub. opn.]) and the trial court's final statement of decision under review on this appeal.

3

by clear and convincing evidence, that they were the real (beneficial) owners of the property under a resulting trust theory.

In the 1970s, Shibli and Naifeh lived and worked in the San Francisco Bay Area. Shibli's brothers, Andy and Simon, lived in Michigan and decided to move their families to the Bay Area. In December 1976, Andy (then unmarried), Simon and his wife and children, the brothers' mother, and two sisters moved to San Bruno.

Before the move to the Bay Area, Simon and Shibli agreed Shibli and his wife Naifeh would obtain a loan to purchase a house (with title in their names) to be used by Andy and Simon as it would be difficult for Andy and Simon to obtain a home loan. In November 1976, Shibli purchased the property, a house in San Bruno. In January 1977, a grant deed for the property was recorded in the names of Shibli and Naifeh as husband and wife. The purchase price was $69,000; Shibli made a $13,800 cash down payment and took out loans.

Considering the evidence in full, the court found the property was purchased for Andy and Simon and their families and that it was the intent of the parties to eventually transfer title to Andy and Simon. The court found Naifeh's testimony – that defendants had purchased the house for their own use and intended to use it as their personal residence, despite having just recently purchased a new house – not credible. And it found Shibli's testimony – that he did not purchase the property for Andy and Simon – unreliable due to very limited recall; his testimony was sprinkled with statements such as " 'I don't know' " and " 'I don't remember' ", and he had "total blanks on what transpired." Shibli's actions were also in conflict with any notion that the property was not for Andy and Simon's use as Shibli

4

consistently told the parties, his mother, and several of plaintiffs' children, that he (Shibli) was going to transfer title to Andy and Simon.

The parties disputed the source of the $13,800 cash down payment and the source of funds expended on the property over the relevant 40-year period. The brothers had a history of loaning money to each other "without anything in writing or specific expectations of repayment." The court found Simon had provided sufficient funds (on behalf of himself and Andy) to Shibli to cover the down payment and that Shibli's testimony that the down payment came entirely from his grocery store was not credible. The court also found that if Shibli used some of his own money toward the down payment, those funds were a repayment of previous loans from Simon and, therefore, credited as a payment made by Simon.

The court found that, except for a brief time shortly after Andy and Simon moved into the property, plaintiffs had made all the mortgage, property tax, home insurance, utility, and remodeling payments; this finding was supported by extensive documentation. In contrast, Naifeh had virtually no documentation in support of her claim that she made extensive payments for the property. "It was this testimony by Naifeh that [led] the court to question the credibility of all of her testimony."

In 1981, and after family disharmony caused by previous unsuccessful attempts to transfer title, the parties reached an agreement. Andy, Simon, and Shibli, with Naifeh present and not objecting, agreed that Shibli and Naifeh would sign over title to the property. In return, Andy and Simon would release their ownership interest in an apartment located in San Francisco. Andy and Simon followed through on their part of the agreement, but defendants never executed the deed to transfer the property. Two years later, defendants' attorney recorded the deed plaintiff brothers had executed

5

for the San Francisco property, and Shibli continued to promise that he intended to have the property transferred to Andy and Simon.

The trial court found "a conflict between what the Plaintiffs alleged occurred and what the parties intended and what the Defendants alleged occurred and what the parties intended. [Plaintiff brothers] had significant documentation and corroboration of their position; while Defendants had scarcely any credible or reliable documentation or corroboration of their position. In fact, it appears that defendants engaged in intentional falsehoods concerning their payments of expenses on the [San Bruno] property. For this reason, the court has discounted the testimony from defendants and found that, by clear and convincing evidence, plaintiffs['] allegations are supported by the evidence."

The trial court specifically addressed the two material issues mentioned in our prior opinion: (1) Naifeh's intent to purchase the property in trust for Andy and Simon; and (2) Shibli's apparent authority to act for Naifeh,[3] as follows:

"The parties dispute whether Naifeh intended to purchase the property in trust for Plaintiff brothers. They further dispute whether Shibli's promises and actions can bind Naifeh, who purportedly (and secretly) objected to any agreement or understanding Shibli had with Plaintiffs in regard to holding the property for Plaintiffs, and ultimately transferring title to them. Both questions are answered by the conduct of the parties. Naifeh remained silent in the presence of Shibli and Plaintiffs when they discussed the subject of transferring title. She never spoke up with any objection.

---

[3]     Accordingly, we reject Naifeh's argument, made for the first time in her reply brief, that the trial court failed to address the issues mentioned in our prior appeal.

6

"The Court finds that both Shibli's and Naifeh's actual intent was to hold title to the property for the benefit of Plaintiffs, and to eventually transfer the property to Plaintiffs. This intent is _inferred_ by both Shibli's and Naifeh's conduct over the relevant 40-year period, during which time Plaintiffs resided in and made all payments toward the subject property. Naifeh testified that, because she feared for her safety from Shibli, she remained silent in the presence of Shibli and Plaintiffs when they discussed the subject of transferring title. The Court does not find Naifeh's testimony regarding her purported fear for her safety to be credible. Rather, the Court finds that any silence on Naifeh's part during discussions about the property's beneficiary ownership, and during Shibli's statements/representations that Defendants were holding title for Plaintiffs, and that Defendants intended to eventually convey title to Plaintiffs, was _not_ due to any fear or reluctance to speak, but rather, it was because Naifeh consented to and agreed with [Shibli's] comments that the Property would be conveyed to Plaintiffs. (Underlining and italics in original.)

"The Court further finds that Shibli had apparent/ostensible authority to act for Naifeh as her agent, and to bind her to the agreement he made with [his] brothers to purchase and hold the property in trust, and to eventually convey title to them as the real (beneficial) owners. To be clear, the Court does [not] conclude that Shibli had apparent/ostensible authority to speak or act for Naifeh merely by virtue of them being married, which . . . itself would be insufficient to speak or act for her. Rather, the Court reaches this finding based on Naifeh's conduct over the roughly forty-year period, in which she repeatedly remained silent, and expressed no disagreement in the face of Shibli's repeated statements and representations that Shibli and Naifeh were holding the property for Plaintiffs and would eventually convey title to

7

Plaintiffs. Naifeh must have known that her failure to express disagreement with Shibli's promises and representations would lead any reasonable person in Plaintiffs' position to believe that Naifeh agreed with Shibli's statements, and that Naifeh had the same intention. (See *Lovetro v. Steers* (1965) 234 Cal.App.2d 461, 475.) (Underlining in original.)

"Thus, this Court finds that Naifeh repeatedly and intentionally led Plaintiffs to believe that Shibli was speaking for her and expressing her intention as well. If Naifeh truly did not agree with Shibli's repeated representations to Plaintiffs and others about the Property (which, again, the Court *does not* find credible), then Naifeh would have had a duty to speak up and express such disagreement, because she would have known that her failure to do so would be very misleading to Plaintiffs, or to any reasonable person in their position. As stated, the Court finds she did not express any disagreement because she in fact agreed with Shibli's representations and statements." (Italics in original.)

After making additional rulings which will be discussed below to the extent they are necessary to resolve Naifeh's appellate arguments, the trial court concluded by explaining that any outcome other than a finding of a resulting trust in favor of plaintiff brothers and conveyance of title to them, "would be highly inequitable" and an "improper result." "In the present case, Defendant Naifeh Azar claims that the Plaintiffs are not entitled to receive the title to the subject property, because she did not consent to the agreement to transfer the property to Plaintiffs. Essentially, she believes that she is entitled to retain the subject property, despite Plaintiffs having made (except for a brief period) all of the first and second mortgage payments, all of the property tax payments, all of the home insurance payments, and all of the utility payments for the property over a forty-year period. In other words,

8

Defendant believes she may retain the benefits of all of Plaintiffs' financial contributions to the property and the property itself by refusing to transfer the title thereto. This is a classic case of a Resulting Trust, and the intent of the holders of title (Defendants) is inferred by their conduct over the forty years Plaintiffs have treated the property as their own. [¶] If Defendants were allowed to retain title to the subject property in the face of the instant facts, this would result in a clear case of unjust enrichment, a profoundly inequitable and demonstrable wrong."

## DISCUSSION

Our review of this appeal is significantly impaired by Naifeh's submission of an incomplete record and appellate briefs that fail to comply with our California Rules of Court. Naifeh, "[a] party proceeding in propria persona 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.'" (*First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 958, fn. 1.)

Naifeh has perfected her appeal using a clerk's transcript; she has filed no reporter's transcript or settled statement of the initial bench trial or the July 12, 2022 remand hearing. (Cal. Rules of Court, rules 8.122 [clerk's transcript], 8.130 [reporter's transcript], 8.137 [settled statement].) The "trial court's findings of fact and conclusions of law [in its final statement of decision] therefore are presumed to be supported by substantial evidence and are binding upon us, unless the judgment is not supported by the findings or reversible error appears on the face of the record." (*Krueger v. Bank of America* (1983) 145 Cal.App.3d 204, 207.)

Additionally, Naifeh's briefs are rife with factual assertions unsupported by any record citations "in dramatic noncompliance with appellate procedures." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246;

9

Cal. Rules of Court, rule 8.204(a)(1)(C) [each appellate brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].) Naifeh also raises numerous legal arguments without any legal authority or cogent analysis as to how or why the court erred or how she was prejudiced by the court's rulings. We will disregard unsupported factual assertions and treat as forfeited any legal arguments made without record citations and/or cogent arguments and citations to legal authority. (See, e.g., *Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 ["[w]hen an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited"]; *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1267 ["plaintiffs make numerous factual assertions in their briefs without record citation" but "[w]e are entitled to disregard such unsupported factual assertions"].)

Moreover, and before the remand hearing, Naifeh filed a supplemental trial brief and related request for judicial notice of certain documents. The July 12, 2022 minute order indicates the court disregarded the supplemental trial brief and related request for judicial notice as all the issues raised in that brief were "irrelevant and not within the scope" of our order on remand. On appeal, Naifeh contends the court abused its discretion by doing so. However, we cannot meaningfully review Naifeh's claim of error as we have no record of what occurred at the remand hearing and she has presented no argument supported by legal authority demonstrating how she was prejudiced by the trial court's ruling. Accordingly, we deem the claim of error forfeited and disregard Naifeh's arguments premised on the factual assertions in her supplemental trial brief and the documents that were not judicially noticed in the trial court. (See *Ehrler v. Ehrler* (1981) 126

10

Cal.App.3d 147, 154 [appellate court cannot review "evidence" contained in trial briefs]; *The Travelers Indemnity Co. of Connecticut v. Navigators Specialty Ins. Co.* (2021) 70 Cal.App.5th 341, 355 [appellate court did not consider a party's appellate arguments that depended on documents for which the trial court denied a request for judicial notice ].)

With these limitations in mind, we now discuss some of the issues presented in Naifeh's briefs.

## I. RESULTING TRUST CAUSE OF ACTION

The law applicable to the imposition of a resulting trust is well settled. "[T]he relationship between resulting trustee and beneficiary arises where one, in good faith, acquires title to property *belonging to another.* The law implies an obligation on the part of the one in whom title has vested to hold the property for the owner's benefit and eventually convey it to the owner. The trustee has no duties to perform, no trust to administer, and no purpose to pursue except the single purpose of holding or conveying the property according to the beneficiary's demands." (*Estate of Yool* (2007) 151 Cal.App.4th 867, 874; see *Bainbridge v. Stoner* (1940) 16 Cal.2d 423, 428 (*Bainbridge*).) In other words, "[t]he duties of a resulting trust[ee] are not active; a resulting trustee merely holds legal title for the beneficiary and, at a proper time, is bound to make a proper conveyance." (*Seabury v. Costello* (1962) 209 Cal.App.2d 640, 646, citing *Bainbridge*, at p. 428.)

" 'Where the legal title rests in one person, to establish a resulting trust for the benefit of another against a presumption in favor of the legal title, the evidence must be clear and convincing, especially when an attempt is made to establish a resulting trust after the lapse of many years or where parol evidence alone is relied upon.' " (*G.R. Holcomb Estate Co. v. Burke* (1935) 4 Cal.2d 289, 299.)

11

*A. Trial Court's Final Statement of Decision Reflects Substantial Evidence Supports Factual Findings*

Throughout her briefs, Naifeh asserts the trial court should have accepted the testimony and evidence proffered by defendants. Without a reporter's transcript of the original bench trial, "the judgment must be *conclusively presumed correct* as to *all evidentiary matters*. . . . The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.) In addition, based on our review of the portions of the trial transcript referenced in the trial court's final statement of decision, we find the court acted well within its discretion in accepting plaintiffs' testimony and evidence and rejecting defendants' testimony as not being credible.

We see no merit to Naifeh's contentions that the trial court impermissibly applied "alleged Palestinian cultural values denying property rights to women," and ignored "the rights of women and wives to make financial decisions" under California law. The court found Naifeh's intent to hold the property in trust for plaintiff brothers was inferred *solely from her own conduct* over the course of the relevant 40 years during which time plaintiff brothers (and later Nadia as Andy's wife) exclusively possessed and resided in the property making all financial expenditures (except for certain mortgage payments incurred when Andy and Simon first came to California); Naifeh failed to object to plaintiffs treating the property as their own; and Naifeh was silent during family discussions when Shibli made repeated statements and representations that the property belonged to Andy and Simon and title would be transferred to them. The trial court made no findings premised on either Naifeh's status as Shibli's wife or the parties'

12

cultural views concerning a husband's right to speak for his wife concerning financial matters.

### B. Resulting Trust Is Not Barred by Statute of Frauds Requirement of a Writing for the Sale or Transfer of Real Estate

We see no merit to Naifeh's argument that a resulting trust could not be imposed in this case as a matter of law because it violated the requirement of a writing for the sale or transfer of real estate as codified in Civil Code sections 1091 and 1624.[4]

The statutory requirement of a writing as expressed in the law cited by Naifeh does not apply to an estate in real property that is the subject of a resulting trust implied by law. As long ago explained by our Supreme Court: "The trust in this case arises purely by operation of law, and results from the acts and agreements of the parties. In such cases the trust need not be created by writing, or proved by written evidence, for it comes clearly within the exception of the [statute of frauds]. . . . [F]rom the facts that the purchase was made with the money of the plaintiffs, and the conveyance made to the defendant, the law implies that the title thus conveyed is held in trust for the person furnishing the money, and thus the trust is created by operation of law. . . . The law is well settled that in cases like the present the trust can be proved by parol evidence." (*Bayles v. Baxter* (1863) 22 Cal. 575, 579.) In other words, "[t]he fact that transferee and payor of the purchase price, and the claimant, made an oral agreement that the former was to hold

---

[4]    Civil Code section 1091 reads in pertinent part: "An estate in real property, . . ., can be transferred only by operation of law, or by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereto authorized by writing." Civil Code section 1624, in pertinent part, lists several "contracts" that are "invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent."

the property in trust for the latter which was unenforceable under the statute of frauds or otherwise, does not prevent a resulting trust from arising. Indeed, such agreement supports the inference or presumption that the payor did not intend that the transferee should have the beneficial interest." (*Viner v. Untrecht* (1945) 26 Cal.2d 261, 270 (*Viner*), disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010.)

### C. Evidence of Plaintiff Brothers' Financial Contributions Supports Imposition of Resulting Trust

We see no merit to Naifeh's argument that a resulting trust could not be imposed in this case as a matter of law because plaintiffs presented no evidence establishing the precise amount or proportion of consideration they contributed to the purchase of the property and plaintiff brothers made only partial mortgage payments.

Naifeh supports her argument with a citation to *Lloyds Bank California v. Wells Fargo Bank* (1986) 187 Cal.App.3d 1038 (*Lloyds*), which is factually distinguishable.  In *Lloyds*, the appellate court found the resulting trust was not supportable as the purported beneficial owners made no attempt to submit evidence of the original purchase price or their individual financial contributions.  (*Id.* at p. 1044.)  Unlike that case, the trial court here found plaintiffs had submitted clear and convincing evidence demonstrating a "classic case" for the imposition of a resulting trust, based on their financial contributions to the purchase price including payment of the entire down payment and payment of the first and second mortgage payments (except for a brief time) as well as payment of all maintenance expenses over the more than 40 years when they exclusively possessed and resided in the residence and treated the property as their own.  We disregard Naifeh's citation to an

14

unpublished opinion, namely *Meyer v. Jeffries* (Dec. 10, 2019, E070773), in violation of California Rules of Court, rule 8.1115(a).

Nor is there any merit to Naifeh's related argument that no resulting trust arises unless the beneficial owner pays the purchase price before or at the time of the conveyance. As explained by our Supreme Court in *Viner*, *supra*, 26 Cal.2d 261, it is not always necessary that the beneficial owner pay the purchase price before or at the time of the conveyance because a resulting trust may be imposed where the trustee agrees to finance the purchase price in the form of a loan from the trustee to the beneficial owner. (*Id*. at pp. 269–270.) Moreover, it is not necessary that there be an express agreement that the beneficiary repay the loan, as an agreement to repay the loan "may be implied," with the trustee of the resulting trust holding the legal title as security for the loan. (*Id*. at p. 270.) Here, at the time of the commencement of the action seeking the transfer of title, Naifeh's need to retain legal title as security for the mortgage loans had been rendered moot as the loans had been paid off in November 1985 and May 2006.

Hence, we conclude the trial court appropriately imposed a resulting trust based on the parties' *conduct* both before and after the purchase of the property. The court found the only reasonable inference that could be drawn from the evidence, which included the 40-year period in which plaintiffs resided in and made all the payments toward the property (except for a brief time), was that both Shibli and Naifeh intended to hold the property in trust for the benefit of plaintiffs and to transfer title to them. The court also found that "Naifeh's silence" during the 40-year period and " Shibli's assurances to everyone that his and Naifeh's intent was to eventually transfer the property" to plaintiffs further supported the imposition of a resulting trust. We see no error in the trial court's imposition of a resulting trust.

15

D. *Resulting Trust Was Not Imposed in Violation of Law Governing Community Property*

Naifeh argues the imposition of a resulting trust was in violation of the law governing community property and the transmutation of community property (Fam. Code, §§ 852, 853).  According to Naifeh, the property was purchased with community assets; as a result, she was an owner of an undivided one-half interest in that property and Shibli could not transfer her interest without her consent.

However, the trial court rejected Naifeh's position that defendants had purchased the property with their own funds and for their own use as community property.  The court found it was never community property; rather it was held in trust for plaintiff brothers, and therefore " '[t]he property that we called community property,' " was " 'impinged by a trust.' " (*Anderson v. Broadwell* (1931) 119 Cal. App.130, 141 (*Anderson*).)  Property acquired during a marriage on or after January 1, 1975, by either husband or wife, or both, including real property situated in this state, is subject to the general community property presumption. (See *In re Brace* (2020) 9 Cal.5th 903, 924; Fam. Code, § 760[5].)  This law "does not, however, include property held in trust by a spouse [or spouses] for a third person." (*Dreher v. Rohrmoser* (1955) 134 Cal.App.2d 196, 199 (*Dreher*); see Bassett, William W., Cal. Community Property Law (2022 ed; Sept. 2022 update), Shared Property Rights in the Community Property System; IV. Contingent Future Interests, §3:41 Legal title in trust ["[l]egal title held in trust by a husband or wife for

---

[5]     Family Code section 760 currently reads: "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."  (Stats. 1992, ch. 162, § 10, operative January 1, 1994.)

16

the benefit of third parties is not community property," citing in fn. 1 to *Dreher, supra*, 134 Cal.App.2d 196 and *Anderson, supra*, 119 Cal. App. 130].)[6]

In sum, plaintiff brothers "had the right to interpose any equitable claim which [they] possessed directed to the issues raised by [the complaint]," and "there was no error in admitting evidence showing the circumstances under which the property here was deeded to [defendants]." (*Dreher, supra*, 134 Cal.App.2d at p. 199.) The trial court's factual findings (discussed *ante*) clearly classified the situation "as a voluntary resulting trust, continuing in nature as reflecting the intention of the parties at the time of its creation." (*Berniker v. Berniker* (1947) 30 Cal.2d 439, 447; see *Bainbridge, supra*, 16 Cal.2d at p. 428.) Having found the legal title had been taken in the names of both defendants in trust for the plaintiff brothers, the court's imposition of a resulting trust created a new relationship between the parties –one of trustees and beneficiaries – as a matter of law. The plaintiff brothers' "right to obtain the legal title" merely became "an incident to" their recognized equitable title as beneficiaries of the resulting trust. (*Love v. Watkins* (1871) 40 Cal. 547, 571.)

Once the trial court entered judgment granting a resulting trust in favor of plaintiff brothers (Andy and Simon) as the real (beneficial) owners, Naifeh was a trustee who held legal title for them. The court quieted title in the names of the beneficial owner Andy and Nadia as his wife; Simon's name

---

[6]     Family Code section 760 derived from Civil Code former section 164, enacted in 1872 and later Civil Code former section 5110, added in 1969. At the time *Anderson supra,* 119 Cal. App. 130 was decided in 1931 and *Dreher, supra*, 134 Cal.App.2d 196 was decided in 1955, Civil Code former sections 162 and 163 defined separate property of the spouses, and Civil Code former section 164 read: "All  other property acquired after marriage by either husband or wife or both, including real property situated in this state . . .  is community property." (Stats. 1927, ch. 487, § 1; Stats. 1941, ch. 455, § 1; see *Dreher*, at p. 199.)

17

is not on the title as he waived any interest in the property. (See *Juranek v. Juranek* (1938) 29 Cal.App.2d 276, 281 [in an action to impose a resulting trust as to property ownership between family members, the trial court could amend the complaint to conform to proof and direct title to be quieted in the names of certain plaintiffs and allow "the withdrawal of another member of this family" who had sued as a co-plaintiff].)

## II.    STATUTE OF LIMITATIONS WAS NOT VIOLATED

We find no merit to Naifeh's argument that the trial court committed prejudicial error by its finding that the resulting trust cause of action was not barred by the four-year statute of limitations under Code of Civil Procedure 343.[7]  As the trial court correctly explained:  "The statute of limitation[s] for a resulting trust does not run against a [beneficiary's] right to enforce the trust until the beneficiary has knowledge of repudiation or breach of the trust.  (13 Witkin, Summary of California Law (11th ed. 2017) Trusts, § 153, p. 744.) The statute begins to run upon a demand by the trustee[ ] or repudiation by the trustor.  (*Martin v. Kehl* (1983) 145 Cal.App.3d 228, 240–241.)  There was neither an absolute or final demand for performance by plaintiffs nor an absolute or final repudiation by defendants.  Therefore, the Statute of Limitations is not a bar to this cause of action."

Naifeh asks us to consider certain factual assertions not supported by any record citations, and the cases of *McCosker v. McCosker* (1954) 122 Cal.App.2d 498 and *Rubinstein v. Minchin* (1941) 46 Cal.App.2d 115.  As already noted, reversible error cannot be demonstrated by assertions of fact not supported by record citations or by citation to cases without a reasoned

---

[7]    Code of Civil Procedure section 343 reads: "An action for relief not hereinbefore provided for must be commenced within four years after the cause of action . . . accrued."

argument as to why we should follow those cases. (See *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52; *Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 826–827, fn. 1.)

We also find unavailing Naifeh's assertion that the trial court's citation to *Martin*, *supra*, 145 Cal.App.3d 228, is not relevant as it concerned a constructive trust and not a resulting trust. In resolving the case before it, the *Martin* court found that although the trial court could employ the remedy of a constructive trust to compel the defendant to convey a property interest for which the plaintiff had paid, the judgment could also be affirmed on the basis of a resulting trust since the express findings of the court would support the imposition of such a trust. (*Id*. at p. 238.) Indeed, the *Martin* court went on to hold that, "[e]ven if the facts pleaded and proved by plaintiff would not sustain the judgment on the theory of constructive trust, they were sufficient to uphold recovery under the resulting trust theory since that theory does not contemplate any factual situation different from that established by the evidence in the trial court." (*Id*. at p. 239.) As the *Martin* court discussed the statute of limitations governing both constructive trusts *and* resulting trusts (*id*. at pp. 240–241), the trial court's citation to that case was appropriate.

III.    **Fifth Cause of Action for Breach of Contract**

The trial court imposed a resulting trust and therefore granted no relief on the complaint's fifth cause of action for breach of contract, a claim premised on allegations that in 1981 the parties had entered into a separate contract for the exchange of titles to the San Bruno and San Francisco properties and defendants had breached that agreement by failing to transfer the San Bruno property title to plaintiffs. Because we are upholding the trial court's grant of relief premised on a resulting trust theory, we do not address Naifeh's arguments concerning the fifth cause of action.

19

## IV. Conclusion

We have made a concerted effort to address Naifeh's arguments.  Any issue not specifically mentioned is omitted due to her failure to present the issue in compliance with the rules governing the adequacy of a record and the contents of briefs.

## DISPOSITION

The August 22, 2022 judgment is affirmed.  Plaintiffs and respondents are awarded costs on appeal.

_____
Petrou, J.

WE CONCUR:


_____
Fujisaki, Acting P.J.


_____
Rodríguez, J.

A166609/*Azar et al., v. Azar et al.*

21